PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1348

BRENDA BUTLER,

                Plaintiff - Appellant,

        v.

DRIVE AUTOMOTIVE INDUSTRIES OF AMERICA, INCORPORATED, d/b/a
Magna Drive Automotive,

                Defendant – Appellee,

        and

EMPLOYBRIDGE OF DALLAS INCORPORATED, d/b/a ResourceMFG;
STAFFING SOLUTIONS SOUTHEAST INCORPORATED, d/b/a
ResourceMFG,

                Defendants.

Appeal from the United States District Court for the District of
South Carolina, at Greenville.  Jacquelyn D. Austin, Magistrate
Judge.  (6:12-cv-03608-JDA)

Argued:  January 29, 2015          Decided:  July 15, 2015

Before KEENAN, FLOYD, and HARRIS, Circuit Judges.

Reversed and remanded by published opinion.  Judge Floyd wrote
the opinion, in which Judge Keenan and Judge Harris joined.

**ARGUED:** Jeffrey Parker Dunlaevy, STEPHENSON & MURPHY, LLC,
Greenville, South Carolina, for Appellant.  Stephanie E. Lewis,

JACKSON LEWIS P.C., Greenville, South Carolina, for Appellee.
**ON BRIEF:** Brian P. Murphy, BRIAN MURPHY LAW FIRM, PC, Greenville, South Carolina, for Appellant.  Wendy L. Furhang, JACKSON LEWIS P.C., Greenville, South Carolina, for Appellee.

———————————

FLOYD, Circuit Judge:

In this Title VII employment discrimination action, Brenda Butler seeks to recover for sexual harassment she allegedly experienced while working at a Drive Automotive Industries (Drive) factory. In the proceeding below, Drive argued that Butler was actually employed by a temporary staffing agency, ResourceMFG, and therefore Drive was not an "employer" subject to Title VII liability. Although the district court acknowledged that in some instances an employee can have multiple "employers" for Title VII purposes, it concluded that in this case ResourceMFG was Butler's sole employer. Accordingly, the district court granted summary judgment to Drive on Butler's claims.

Like the district court, and several of our sister circuits, we agree that Title VII provides for joint employer liability. We further conclude that the so-called "hybrid" test, which considers both the common law of agency and the economic realities of employment, is the correct means to apply the joint employment doctrine to the facts of a case. The district court did not explicitly use the "hybrid" test in its opinion. Under our de novo standard of review, we articulate the hybrid test for the joint employment context and apply it to the facts of this case, concluding that Drive was indeed

3

Butler's employer.   Accordingly, we reverse and remand for consideration of Butler's Title VII claims on the merits.

I.

Appellant Brenda Butler was hired by ResourceMFG,[1] a temporary employment agency, to work at Drive Automotive Industries in Piedmont, South Carolina.   Drive manufactures doors, fenders, and other parts for automotive companies.   The company hires some employees directly and employs others through temporary employment agencies.

Drive and ResourceMFG each exercised control over various aspects of Butler's employment.   For example, Butler wore ResourceMFG's uniform, was paid by ResourceMFG, and parked in a special ResourceMFG lot.   ResourceMFG also had ultimate responsibility for issues related to discipline and termination. Drive, however, determined Butler's work schedule and arranged portions of Butler's training.   Drive employees supervised Butler while she worked on the factory floor.   Butler said she was told by ResourceMFG that she worked for "both" Drive and ResourceMFG.   J.A. 36-37 ("They always told me that both of them

---

[1] Employbridge of Dallas Inc. and Staffing Solutions Southeast Inc. do business as ResourceMFG.

4

w[ere] our employers. . . . [W]e w[ere] considered to be working for both.").

Butler claims that one of her Drive supervisors, John Green, verbally and physically harassed her throughout her time at Drive. Specifically, Butler alleges that Green made repeated comments about Butler's physical features, such as "You sure do have a big old ass"; "I wish my girlfriend had a big old ass like yours"; "Boy, I love women with big old asses"; and calling her a "big booty Judy." J.A. 94, 103, 132. Green also rubbed his crotch against Butler's buttocks. J.A. 98-100. Butler reported Green's conduct to ResourceMFG's on-site representative, Ryan Roberson, and to Green's supervisor at Drive, Lisa Gardner Thomas. According to Butler, however, neither took any action to curb the harassment.

The harassment culminated on December 19, 2010, when Green directed Butler to work on a particular machine called "the laser." Butler refused, saying she was tired from working overtime the night before. Green said that his supervisor had said "hell no." J.A. 86. Green continued, "You have to run it. If you can't fucking run it, take your ass home. . . . [Y]our assignment has ended." Id. He also called her "big booty Judy" again. Id. When Butler objected to Green's language, he informed her that she was a temp and could be easily fired.

When Butler informed Thomas of the encounter, Thomas asked another supervisor at Drive that Butler be terminated. J.A. 383. The request was then sent to ResourceMFG. A few days later, Green called Butler and implied that he could save her job by performing sexual favors for him. Butler refused. A ResourceMFG supervisor then called her to tell her she had been terminated from Drive.

In November 2012, Butler filed suit against both Drive and ResourceMFG in South Carolina state court. After Drive timely removed the case to federal court, the parties agreed to dismiss the case against ResourceMFG, leaving Drive as the sole remaining defendant. In April 2013, the district court granted Drive's motion for summary judgment,[2] finding that Drive did not exercise sufficient control over Butler's employment such that it could be liable as her employer under Title VII. Butler now appeals the district court's grant of summary judgment.

## II.

Pursuant to 28 U.S.C. § 636(c)(3), we have jurisdiction of this appeal from the judgment of the magistrate judge. We review the district court's grant of summary judgment de novo,

---

[2] The parties consented to the jurisdiction of a magistrate judge. For the sake of simplicity, we will refer to the magistrate judge as the district court.

drawing "reasonable inferences in the light most favorable to the non-moving party." Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012). We also review de novo questions of statutory interpretation—in this case, the proper construction of "employer" in Title VII. Stone v. Instrumentation Lab. Co., 591 F.3d 239, 242-43 (4th Cir. 2009).

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To overcome a motion for summary judgment, however, the nonmoving party "'may not rely merely on allegations or denials in its own pleading' but must 'set out specific facts showing a genuine issue for trial.'" News & Observer Publ'g Co. v. Raleigh–Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (quoting Fed. R. Civ. P. 56(e)).

III.

An entity can be held liable in a Title VII action only if it is an "employer" of the complainant. Title VII of the Civil Rights Act of 1964 defines an "employer" as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). In turn, an "employee" is "an

7

individual employed by an employer." Id. § 2000e(f). As the Supreme Court has noted, definitions of "employer" and "employee" in federal law are often circular and "explain[] nothing." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992).

The parties do not dispute that ResourceMFG employed Butler. The dispositive question on appeal is whether Drive also employed Butler for Title VII purposes. In answering this question, we first must consider the threshold issue of whether an employee can have multiple "employers" under Title VII. Our review of this question of law is de novo. Cilecek v. Inova Health Sys. Servs., 115 F.3d 256, 261 (4th Cir. 1997) (citing MacMullen v. S.C. Elec. & Gas Co., 312 F.2d 662, 670 (4th Cir. 1963)). The district court accepted the possibility that both entities could in theory be Butler's "employer" for Title VII purposes pursuant to the joint employment doctrine. As set forth below, we conclude that the joint employment doctrine is an appropriate construction of Title VII, and so affirm the district court on that issue.

A.

Other courts have found that two parties can be considered joint employers and therefore both be liable under Title VII if they "share or co-determine those matters governing the

8

essential terms and conditions of employment."  Bristol v. Bd. of Cnty. Comm'rs, 312 F.3d 1213, 1218 (10th Cir. 2002) (en banc) (quoting Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1360 (11th Cir. 1994)).  In other words, "courts look to whether both entities 'exercise significant control over the same employees.'"  Id. (quoting Graves v. Lowery, 117 F.3d 723, 727 (3d Cir. 1997)).  "The basis for the finding that two companies are 'joint employers' is that 'one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'"[3]  Torres-Negrón v. Merck & Co., 488 F.3d 34, 40 n.6 (1st Cir. 2007) (quoting Rivas v. Federación de Asociaciones Pecuarias de P.R., 929 F.2d 814, 820 n.17 (1st Cir. 1991)).

Although this Circuit has never expressly adopted the joint employment doctrine in the Title VII context, district courts in this Circuit have frequently applied it.  See Murphy-Taylor v.

---

[3] The joint employment doctrine is distinct from the "single employer" or "integrated employer" doctrine, in which "a parent company and its subsidiary can be considered a single employer for purposes of Title VII liability." Murphy-Taylor v. Hofmann, 968 F. Supp. 2d 693, 725 (D. Md. 2013) (citing Hukill v. Auto Care, Inc., 192 F.3d 437, 442 (4th Cir. 1999), abrogated on other grounds by Arbaugh v. Y & H Corp., 546 U.S. 500 (2006)). Here, Drive and ResourceMFG are clearly discrete entities, and the parties do not argue that they could constitute an integrated employer.

9

Hofmann, 968 F. Supp. 2d 693, 725 (D. Md. 2013) (observing that this Circuit "does not appear to have specifically considered whether to apply [the joint employment doctrine] in the employment discrimination context").[4] Many of our sister circuits, moreover, have considered the possibility that multiple entities could be employers of a plaintiff and adopted the joint employment doctrine.[5] We now hold that the joint employment doctrine is the law of this Circuit.

The joint employment doctrine is wholly consistent with our precedent. We have repeatedly used the joint employment doctrine in cases involving analogous statutes to resolve similar difficulties in defining "employer" and "employee." See Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298, 305-06 (4th Cir. 2006) (Fair Labor Standards Act); Howard v. Malcolm, 852 F.2d 101, 102, 104-05 (4th Cir. 1988) (Migrant and Seasonal

---

[4] See, e.g., Murphy-Taylor, 968 F. Supp. 2d at 725-28; Simpson v. Greenville Transit Auth., No. 6:05-1087-HMH-BHH, 2006 WL 1148167, at *3-5 (D.S.C. Apr. 27, 2006); Williams v. Grimes Aerospace Co., 988 F. Supp. 925, 934-36 (D.S.C. 1997); King v. Dalton, 895 F. Supp. 831, 837-38 (E.D. Va. 1995); Magnuson v. Peak Technical Servs., Inc., 808 F. Supp. 500, 507-10 (E.D. Va. 1992).

[5] See, e.g., Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 197-98 (2d Cir. 2005); Graves, 117 F.3d at 727; EEOC v. Skanska USA Bldg., Inc., 550 F. App'x 253, 256 (6th Cir. 2013); Robinson v. Sappington, 351 F.3d 317, 332 n.9 & 337–39 (7th Cir. 2003); EEOC v. Pac. Mar. Ass'n, 351 F.3d 1270, 1277 (9th Cir. 2003); Bristol, 312 F.3d at 1218; Virgo, 30 F.3d at 1359-61.

10

Agricultural Worker Protection Act); NLRB v. Jewell Smokeless Coal Corp., 435 F.2d 1270, 1271 (4th Cir. 1970) (per curiam) (National Labor Relations Act). Nothing suggests a different treatment is warranted here.

Second, the doctrine's emphasis on determining which entities actually exercise control over an employee is consistent with Supreme Court precedent interpreting Title VII's definitions. The Supreme Court has held that "the common-law element of control," drawn from the law of agency, "is the principal guidepost" to be followed when construing an analogous claim under the Americans with Disabilities Act. Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 448 (2003). Likewise, the Fourth Circuit has consistently focused on control, especially in the comparable instance where the status of the plaintiff as an employee or independent contractor is at issue. See, e.g., Cilecek, 115 F.3d at 260. The joint employment doctrine captures instances in which multiple entities control an employee.

Third, the joint employer doctrine serves Title VII's purpose of eliminating "discrimination in employment based on race, color, religion, sex, or national origin." Lucido v. Cravath, Swaine & Moore, 425 F. Supp. 123, 126 (S.D.N.Y. 1977). Title VII should be liberally construed in light of its remedial purpose. Hernandez v. Aldridge, 866 F.2d 800, 803 (5th Cir.

11

1989), <u>vacated on other grounds</u>, <u>Hernandez v. Rice</u>, 494 U.S. 1013 (1990); <u>see also</u> <u>Arnold v. Burger King Corp.</u>, 719 F.2d 63, 65 (4th Cir. 1983) (noting the "broad remedial purposes of Title VII"). As the Eighth Circuit has noted, "[s]uch liberal construction is also to be given to the definition of 'employer.'" <u>Baker v. Stuart Broad. Co.</u>, 560 F.2d 389, 391 (8th Cir. 1977); <u>see also</u> <u>Magnuson</u>, 808 F. Supp. 500, 508 (E.D. Va. 1992) (noting the "broad, remedial purpose of Title VII which militates against the adoption of a rigid rule strictly limiting 'employer' status under Title VII to an individual's direct or single employer").

Finally, the joint employment doctrine also recognizes the reality of changes in modern employment, in which increasing numbers of workers are employed by temporary staffing companies that exercise little control over their day-to-day activities. <u>See</u> <u>Williams v. Grimes Aerospace Co.</u>, 988 F. Supp. 925, 933-34 (D.S.C. 1997) ("While the phenomenon of temporary employees first gained momentum in the United States' post-World War II economy, 'the temporary help industry has recently exploded, especially since the 1980s.'" (brackets omitted) (quoting <u>Development in the Law—Employment Discrimination: V. Temporary Employment and the Imbalance of Power</u>, 109 Harv. L. Rev. 1647, 1648 (1996))); <u>Lima v. Addeco</u>, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009) ("The joint employer doctrine has been applied

12

to temporary employment or staffing agencies and their client entities.").

The joint employment doctrine thus prevents those who effectively employ a worker from evading liability by hiding behind another entity, such as a staffing agency. Sibley Mem'l Hosp. v. Wilson, 488 F.2d 1338, 1341 (D.C. Cir. 1973). Given Title VII's remedial intent, employers should not be able to "avoid Title VII by affixing a label to a person that does not capture the substance of the employment relationship." Schwieger v. Farm Bureau Ins. Co. of Neb., 207 F.3d 480, 484 (8th Cir. 2000).

Consequently, we hold that multiple entities may simultaneously be considered employers for the purposes of Title VII.

IV.

We turn next to whether the court correctly applied the joint employment doctrine in this case. The object of the joint employment doctrine is to determine whether a putative employer "exercise[s] significant control over the same employees." Bristol, 312 F.3d at 1218 (quoting Graves, 117 F.3d at 727). The question then is how to determine the extent to which an employer "controls" an employee.

13

Courts have formulated at least three tests that could be used in the joint employment context: the economic realities test, the control test, and the hybrid test. All three tests aim to determine, in a highly fact-specific way, whether an entity exercises control over an employee to the extent that it should be liable under Title VII. See Clackamas, 538 U.S. at 448 (stating in an ADA case that the "common-law element of control is the principal guidepost that should be followed").

The district court did not explicitly state which test it used, but cited to some of our existing precedent in analogous areas of the law. We find that the district court conducted an inappropriate analysis under our articulation of the joint employment doctrine today. Accordingly, under our de novo standard of review, we reverse the district court and remand for further proceedings.

A.

We will briefly review the three tests, as developed by our sister circuits, along with our own precedent, that could be used for the joint employment doctrine under Title VII.

14

Drive contends that this Circuit should adopt the "control" test, which is drawn solely from basic principles of agency law.[6] Some other circuits and district courts in this Circuit use the control test.[7]   E.g., EEOC v. Skanska USA Bldg., Inc., 550 F. App'x 253, 256 (6th Cir. 2013); Graves, 117 F.3d at 727-28; NLRB v. Browning-Ferris Indus. of Pa., Inc., 691 F.2d 1117, 1123 (3d Cir. 1982); Allen v. Tyco Elecs. Corp., 294 F. Supp. 2d 768, 774 (M.D.N.C. 2003); see also Haavistola v. Cmty. Fire Co. of Rising

---

[6] Drive cites in support, among other authority, enforcement guidance issued by the Equal Employment Opportunity Commission. Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms, EEOC Notice No. 915.002, 1997 WL 33159161 (Dec. 3, 1997).   Drive concedes that the EEOC notice does not warrant Chevron deference, although it may warrant Skidmore deference. See Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) (noting that courts can be persuaded by an agency's rule, in the absence of formal Chevron deference, when the agency has a "body of experience and informed judgment to which courts and litigants may properly resort for guidance").   In any event, the EEOC guidance document does not support Drive's position.   In defining an "employee" for the purposes of federal employment discrimination laws, the guidance document contains a list of considerations that very closely approximate the Spirides factors (discussed below), suggesting that the EEOC looks to the hybrid test, not to the control test.

[7] Some cases have framed the analysis in terms of the "master-servant" or "loaned-servant" doctrine, in which "employees placed in a work position through a temporary agency are considered 'loaned servants.'   . . .   [A]n employment relationship is created between the special employer and the temporary employee only when the special employer controls the means and manner of the temporary employee's work."  Allen, 294 F. Supp. 2d at 774 (quoting Mullis v. Mechs. & Farmers Bank, 994 F. Supp. 680, 684 (M.D.N.C. 1997)).

15

Sun, Inc., 6 F.3d 211, 220 (4th Cir. 1993) ("The common-law standard traditionally used when deciding whether an individual can claim employee status emphasizes the importance of the employer's control over the individual.").

Courts in the Third Circuit, for example, have used three factors to determine whether an entity exercises sufficient control over an employee for Title VII liability:

> 1) authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours;
> 2) day-to-day supervision of employees, including employee discipline; and
> 3) control of employee records, including payroll, insurance, taxes and the like.

Butterbaugh v. Chertoff, 479 F. Supp. 2d 485, 491 (W.D. Pa. 2007) (quoting Cella v. Villanova Univ., No. CIV.A.01-7181, 2003 WL 329147, at *7 (E.D. Pa. Feb. 12, 2003)); see also Plaso v. IJKG, LLC, 553 F. App'x 199, 205 (3d Cir. 2014). The Sixth Circuit looks to a similar set of factors, looking to "an entity's ability to hire, fire or discipline employees, affect their compensation and benefits, and direct and supervise their performance." Skanska USA Bldg., Inc., 550 F. App'x at 256. The control test is somewhat formal in that it tends to look to the legal parameters of employment such as hiring and firing, supervision and from where an employee receives his or her paychecks.

16

Butler, by contrast, argues, that the economic realities test applies.[8]  This test differs from the control test in that it focuses on "degree of economic dependence of alleged employees on the business with which they are connected that indicates employee status."[9]  EEOC v. Zippo Mfg. Co., 713 F.2d 32, 37 (3d Cir. 1983) (brackets and ellipsis omitted) (quoting Usery v. Pilgrim Equip. Co., 527 F.2d 1308, 1311 (5th Cir. 1976)); see also Hopkins v. Cornerstone Am., 545 F.3d 338, 343 (5th Cir. 2008) (applying the test in an FLSA case).  In other words, the economic realities test focuses less on the legal parameters of employment, but more on the entity (or entities)

---

[8]  The economic realities test originated in a different context in a Supreme Court case from the 1940s, in which the Court was asked to resolve whether a defendant was an employee or independent contractor for the purpose of determining Social Security taxes.  See Bartels v. Birmingham, 332 U.S. 126, 130 (1947) ("[I]n the application of social legislation employees are those who as a matter of economic reality are dependent upon the business to which they render service.").

[9]  Drive cites one of our decisions, Garrett v. Phillips Mills, Inc., for the proposition that this Circuit has already rejected the economic realities test.  721 F.2d 979 (4th Cir. 1983).  In some respects, this characterization is accurate, because Garrett did in fact reject the economic realities test. But it is not helpful to Drive's case because the Court in Garrett clearly adopted the hybrid test, discussed infra, and rejected the individual control test.  Id. at 981-92 (stating that the Court was "convinced that whether an individual is an employee in the ADEA context is properly determined by analyzing the facts of each employment relationship under a standard that incorporates both the common law test derived from principles of agency and the so-called 'economic realities' test").

17

on which the employee relies on for work and remuneration—irrespective of who is actually writing the paychecks and determining work status. An entity that is a mere front might be an employer under the control test, but it would not be under the economic realities test.

This Circuit has applied the economic realities test in the context of the Migrant and Seasonal Agricultural Worker Protection Act and the Fair Labor Standards Act. See Howard, 852 F.2d at 104-05 (deciding whether there was joint employment); Schultz, 466 F.3d at 304-05 (deciding whether the plaintiff was an employee or independent contractor). In Schultz, for example, we said that the joint employment question must "take into account the real economic relationship between the employer who uses and benefits from the services of workers and the party that hires or assigns the workers to that employer. The ultimate determination of joint employment must be based upon the circumstances of the whole activity."[10] 466

---

[10] Drive correctly notes, however, that the FLSA uses a different definition of "employee" such that the statute is not directly analogous to Title VII. Darden, 503 U.S. at 326 (noting that the FLSA's definition "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles"). As such, FLSA cases employing the economic realities test—and indeed any test—are not particularly transferrable to Title VII cases.

18

F.3d at 306 (citations, brackets, and internal quotation marks omitted).

Finally, below and on appeal, neither Butler nor Drive argued in favor of the hybrid test, even though we have consistently adopted it in analogous Title VII cases. The hybrid test combines aspects of the economic realities and control tests. In Garrett v. Phillips Mills, Inc., we adopted the hybrid test in an ADEA independent contractor case, describing the test as "analyzing the facts of each employment relationship under a standard that incorporates both the common law test derived from principles of agency and the so-called 'economic realities' test." 721 F.2d 979, 981 (4th Cir. 1983). We noted that "the test applied in Title VII cases was appropriate for resolving employee status issues in ADEA cases." Id.

The Garrett court adopted a list of factors (the "Spirides factors") to evaluate along with the entity's degree of control:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision;
> (2) the skill required in the particular occupation;
> (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work;
> (4) the length of time during which the individual has worked;
> (5) the method of payment, whether by time or by the job;

19

> (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation;
> (7) whether annual leave is afforded;
> (8) whether the work is an integral part of the business of the "employer";
> (9) whether the worker accumulates retirement benefits;
> (10) whether the "employer" pays social security taxes; and
> (11) the intention of the parties.

Id. at 982 (quoting Spirides v. Reinhardt, 613 F.2d 826, 832 (D.C. Cir. 1979)).  Under the hybrid test, "control is still the most important factor to be considered, but it is not dispositive."  Id.

A decade later, we implicitly adopted the hybrid test in a Title VII case to determine whether a plaintiff was an independent contractor or an employee.  Haavistola, 6 F.3d at 219-20.  Referencing Garrett, we remarked that "the operative language in ADEA is identical to the operative language in Title VII, so the analysis utilized under either act is interchangeable."  Id. at 219 n.2.  We further described "a standard that incorporates both the common law test derived from principles of agency and the so-called 'economic realities' test," which asks whether employees "as a matter of economic reality are dependent upon the business to which they render service."  Id. at 220 (citations omitted).

Subsequently, in Cilecek, we re-emphasized the importance of the traditional common law of agency, while citing the hybrid test used in Garrett and Haavistola approvingly. 115 F.3d at 260. Cilecek did not purport to overturn our existing precedent. Indeed, we cited a Supreme Court case, Nationwide Mutual Insurance Co. v. Darden, that emphasized the importance of the common law of agency, while using factors markedly similar to our decisions in Garrett and Haavistola.[11] Id. at 259 (citing Darden, 503 U.S. at 322-23); see also id. at 260 (calling the Spirides factors "similar" to the ones in Darden). We also modified the Darden factors to make them more applicable to the specific industry context present in Cilecek. Id. at 260-61; see also Bender v. Suburban Hosp., 998 F. Supp. 631, 635 (D. Md. 1998) (observing that the hybrid test was modified "to make it more applicable to the hospital context").

Guided by these decisions, we conclude that the hybrid test best captures the fact-specific nature of Title VII cases, such as the one before us. Cf. Haavistola, 6 F.3d at 222 ("Title VII

---

[11] In Darden, the Supreme Court reversed a decision from this Circuit, which held, drawing from the purpose of ERISA, that an "ERISA plaintiff can qualify as an 'employee' simply by showing" that the plaintiff had a reasonable expectation of benefits, relied on this expectation, and lacked the bargaining power to contract out of forfeiture provisions. Id. at 321. Instead, the Supreme Court referred to a list of factors from a copyright case. That list of factors is virtually the same as the ones in Spirides.

21

claims involved fact-intensive determinations for which the district court was not equipped to rule on the basis of a summary judgment record alone."); Hunt v. State of Mo., Dep't of Corr., 297 F.3d 735, 741 (8th Cir. 2002) (finding that an employer-employee relationship is a "fact-intensive consideration of all aspects of the working relationship between the parties" (citation and internal quotation marks omitted)). The hybrid test also allows for the broadest possible set of considerations in making a determination of which entity is an employer.  Moreover, it best captures the reality of modern employment in which "control" of an employee may be shared by two or more entities.  The hybrid test correctly bridges the control test and the economic realities test.

Accordingly, we adopt the hybrid test.  We find, however, that our previous statements of the hybrid test, involving the analogous but legally distinct independent contractor context, do not adequately capture the unique circumstances of joint employment.  The factors used in Spirides and Cilecek include considerations that are irrelevant to the joint employment context.  Drawing on our existing precedent and joint employment cases in other circuits, we now articulate a new set of factors for courts in this Circuit to use in assessing whether an individual is jointly employed by two or more entities:

(1) authority to hire and fire the individual;

22

(2) day-to-day supervision of the individual, including employee discipline;

(3) whether the putative employer furnishes the equipment used and the place of work;

(4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;

(5) the length of time during which the individual has worked for the putative employer;

(6) whether the putative employer provides the individual with formal or informal training;

(7) whether the individual's duties are akin to a regular employee's duties;

(8) whether the individual is assigned solely to the putative employer; and

(9) whether the individual and putative employer intended to enter into an employment relationship.[12]

We note that none of these factors are dispositive and that the common-law element of control remains the "principal guidepost" in the analysis. Indeed, consistent with our opinion in Cilecek, courts can modify the factors to the specific industry context. See id. at 261 (refashioning factors for a controversy arising in a hospital setting); Darden, 503 U.S. at 323-324 (prefacing its list of factors with "[a]mong the other factors relevant to this inquiry are").

---

[12] We pause to note that the ninth factor regarding the subjective intentions of the parties ordinarily will be of minimal consequence in the joint employment analysis. For example, the fact that an employee signs a form disclaiming an employment relationship will not defeat a finding of joint employment. Similarly, an individual's failure to appreciate an entity as an employer should not be dispositive. Instead, the intent of the parties should be part of the overall fact-specific inquiry into the putative employee's circumstances.

Three factors are the most important. The first factor, which entity or entities have the power to hire and fire the putative employee, is important to determining ultimate control. The second factor, to what extent the employee is supervised, is useful for determining the day-to-day, practical control of the employee. The third factor, where and how the work takes place, is valuable for determining how similar the work functions are compared to those of an ordinary employee. When applying the joint employment factors, however, "no one factor is determinative, and the consideration of factors must relate to the particular relationship under consideration." Cilecek, 115 F.3d at 260. Courts should be mindful that control remains the principal guidepost for determining whether multiple entities can be a plaintiff's joint employers.

B.

We next consider, under our de novo standard of review, whether the district court correctly applied the hybrid test in this case. The district court did not explicitly state which test it was using, but the language in the opinion emphasized the importance of the "common law of agency." J.A. 427-28. The district court, however, also cited Cilecek and referred to the Darden factors, which, as explained above, suggests a broader set of considerations than what the somewhat narrow control test

24

would entail. J.A. 432 (citing <u>Farlow v. Wachovia Bank of North Carolina, N.A.</u>, 259 F.3d 309, 314 (4th Cir. 2001)).

Under the set of factors we state above, the district court inappropriately discounted several considerations that militate in favor of finding that Drive and ResourceMFG are joint employers of Butler. Most importantly, Drive exhibited a high degree of control over the terms of Butler's employment (factor 1). The uncontradicted evidence shows that a Drive employee sent an e-mail to Roxanne Lombard, an ResourceMFG employee, directing that Butler be "add[ed] to the list for replacement." J.A. 383. ResourceMFG then, after a delay, terminated Butler. Although ResourceMFG was the entity that formally fired Butler, Drive had effective control over Butler's employment. Charlie Sanders, the ResourceMFG branch manager in Greenville, South Carolina, could not recall an instance when Drive requested an ResourceMFG employee to be disciplined or terminated and it was not done. J.A. 330-31.

Second, Drive employees supervised both sets of workers (factor 2). Indeed, Drive--specifically Green and Thomas-- handled the day-to-day supervision of Butler on the factory floor.

Third, Drive and ResourceMFG employees worked "side by side," performed the same tasks, and used the same equipment (factor 3). J.A. 332. Although Butler wore a ResourceMFG

25

uniform on the factory floor, there was little or no effective difference between the work performed by the two sets of employees.

Fourth, Butler's labor was not tangential or peripheral to Drive. Instead, she performed the same tasks as Drive employees and produced goods that were Drive's core business (factor 7).

The hybrid test, as we have articulated it, specifically aims to pierce the legal formalities of an employment relationship to determine the loci of effective control over an employee, while not discounting those formalities entirely. Otherwise, an employer who exercises actual control could avoid Title VII liability by hiding behind another entity. Here, although ResourceMFG disbursed Butler's paychecks, officially terminated her, and handled employee discipline, it did not prevent Drive from having a substantial degree of control over the circumstances of Butler's employment. Accordingly, we reverse the district court and hold, as a matter of law, that Drive and ResourceMFG are Butler's joint employers.[13]

---

[13] The outcome of this case would have been the same even if we adopted the list of factors in Cilecek or Spirides for use in this case. The factors we outlined overlap greatly with Cilecek and Spirides, and the three factors that we stated are most important to the joint employment context are present in Cilecek and Spirides as well.

C.

The district court concluded that Drive was not Butler's employer and could therefore not be held liable for Butler's hostile work environment and retaliation claims. Because we reverse the district court's finding that Drive was not an employer of Butler, the district must now consider the merits of Butler's claims. Consequently, we remand those claims for consideration by the district court in the first instance.

V.

The judgment of the district court is

REVERSED AND REMANDED.