Affirmed by unpublished opinion. Judge Keenan wrote the majority opinion, in which Judge Wilkinson joined. Chief Judge Traxler wrote a dissenting opinion.
Unpublished opinions are not binding precedent in this circuit.
BARBARA MILANO KEENAN, Circuit Judge:
This ease arose from plaintiff Karen Greene’s employment as a janitor with Eu-rest Services, Inc. (Eurest). Eurest had assigned Greene to provide cleaning services at the office of the defendant, Harris Corporation (Harris), which Greene maintained also was her employer under a joint employment doctrine. Greene alleged that while working at Harris’ office, Harris and its employee, Harl Dan Pierce, discriminated against her based on her sexual orientation and personal appearance, in violation of local anti-discrimination laws.
The district court dismissed Greene’s complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), concluding that Greene had failed to allege sufficiently that she was an “employee” of Harris as required by the relevant anti-discrimination laws. Upon our review, we affirm the district court’s judgment.
I.
Before her employment with Eurest, Greene had provided janitorial services for Harris for 14 years under contracts between Harris and the cleaning company that Greene formerly operated.[1] In October 2008, during the period of Greene’s contracts with Harris, Pierce.began working in Harris’ office in Columbia, Maryland (Harris’ office). Pierce generally treated Greene in a rude manner. Pierce also made derogatory statements about Greene to other employees, including that she was “frumpy, dumpy, and dress[ed] like a man in flannel and jeans.”
In January or February 2010, Pierce learned from another employee -that Greene was a lesbian, and soon, after terminated her contract. Greene first learned of the decision when she saw a termination letter while cleaning Pierce’s office. Pierce later informed Greene that her contract was being terminated for budgetary reasons. Greene’s last day at Harris under the terminated contract was March 31, 2010.
Later in the same year, Harris and Eu-rest entered into a contract for cleaning services under which Eurest agreed to assign some of its janitorial employees to clean Harris’ office. Under the terms of the Eurest-Harris contract, Harris was required to provide cleaning supplies for Eurest’s cleaning crew and to conduct on-site supervision of the crew’s work. Harris also retained the ability to evaluate assigned Eurest personnel, and to exercise its discretion to refuse an assigned janitor “for cause.”
Eurest hired Greene as a full-time Eu-rest employee on December 6, 2010, and assigned her to work at Harris’ office. On her first day at Harris’ office, Pierce saw Greene and “immediately had Harris security escort her from the premises.”[2] Pierce *162 sent an email the same day to Harris’ facilities manager stating:
I came to work this morning to find Karen Greene cleaning the facility. This is the woman whom we dismissed because she was charging us $5000 a month. This is the woman who inappropriately searched my office and screamed obscenities at me.
Russ, what is going on?
Four days later, Pierce placed a telephone call to Eurest, stating that Harris had banned Greene from the premises and directing Eurest “to immediately remove her from working at the office.” After receiving Pierce’s complaint, Eurest terminated Greene’s employment.
Greene filed this civil action[3] against Harris, and Pierce (the defendants), alleging: (1) discrimination based on her sexual orientation and personal appearance, in violation of Howard County, Maryland Code §§ 12.208,1(a) & 11(a)(1);[4] and (2) a claim under Maryland law for tortious interference with her business relationship with Eurest. The district court granted the defendants’ motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The court concluded that Greene was not an “employee” of Harris and, therefore, was not protected against Pierce’s conduct under the Howard County anti-discrimination laws. The court also held that Greene had not plausibly alleged that Harris committed a “wrongful act,” as required under Maryland law for a tor-tious interference claim. This appeal followed.
II.
We review de novo the district court’s dismissal of a complaint for failure to state a claim under Rule 12(b)(6). Andon, LLC v. City of Newport News, Va., 818 F.3d 510, 513 (4th Cir. 2016). The allegations in a plaintiffs complaint “must state a claim to relief that is plausible on its face.” Id. at 513-14 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal quotation marks omitted). Accordingly, to survive a motion to dismiss, the “[factual allegations [of a complaint] must be enough to raise a right to relief above the speculative level.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
A.
■ Greene first argues that she was an employee of both Eurest and Harris on December 6, 2010, and that the district court erred in concluding that she failed to allege an employment relationship with Harris. Although Greene’s complaint relies heavily on selected language from the contract between Eurest and Harris, the record before us does not contain the entire contract. Nevertheless, Greene contends that because the contract gave Harris some authority to evaluate and supervise Eurest janitorial personnel, the contract thereby established an employment relationship between Greene and Harris. We disagree with Greene’s argument.
As relevant here, the Howard County Code (the Code) prohibits employers from *163 discharging an employee because of the person’s sexual orientation or personal appearance. Howard County, Maryland Code (HCC) § 12.208, 1(a), 11(a). The Code defines the term “employer” as “a person, engaged in an industry or business, who has five or more full-time or part-time employees for each working day in each [of] 20 or more calendar weeks in the current or previous calendar year and any agent of such a person.” Id. § 12.208, (I)(d). The term “employee” is defined in a circular fashion as “an individual employed by an employer.” Id. § 12.208, (I)(c). Because the definition of “employer” in the Code is analogous to the definition of that term in Title VII of the Civil Rights Act of 1964 (Title VII), see 42 U.S.C. § 2000e(b), we' are guided by federal precedent in interpreting the Code’s definition. See Taylor v. Giant of Md., LLC, 423 Md. 628, 33 A.3d 445, 469 (2011) (explaining Maryland courts’ “history of consulting federal precedent in the equal employment area”) (citing Haas v. Lockheed Martin Corp., 396 Md. 469, 914 A.2d 736, 742 (2007)).
After the district court’s decision in this case, we issued our opinion in Butler v. Drive Automotive Industries of America, Inc., in which we held that a plaintiff pursuing a claim under Title VII may be considered an employee of more than one employer under the joint employment doctrine. 793 F.3d 404, 408 (4th Cir. 2016). We emphasized that this doctrine is intended to prevent “those who effectively employ a worker from evading liability by hiding behind another entity, such as a staffing agency.” Id. at 410.
We established a nine-factor test to determine whether an employee of a staffing agency also was employed by the client to which she was assigned, focusing on the amount of control the client exercised over the putative employee. Id. at 414. Under this test, we may consider:
(1) [the putative employer’s] authority to hire and fire the individual;
(2) [the] day-to-day supervision of the individual, including employee discipline;
(3) whether the putative employer furnishes the equipment used and the place of work;
(4) possession of and responsibility over the individual’s employment records, including payroll, insurance, and taxes;
(5) the length of time during which the individual has worked for the putative employer;
(6) whether the putative .employer provides the individual with formal or informal training;
(7) whether the individual’s duties are akin to a regular employee’s duties;
(8) whether the individual is assigned solely to the putative employer; and
(9) whether the individual and putative employer intended to enter into an employment relationship.
Id.
The plaintiff in Butler was employed directly by a staffing agency, which conducted many traditional employer functions such as issuing paychecks and imposing employee discipline. Id. at 4Í5. However, because the plaintiff in that case worked side-by-side with workers employed solely by the client, was directly engaged in producing the client’s product, and was supervised by a manager employed by the client, we concluded that the plaintiff had established an employment relationship necessary to subject the client to potential liability under Title VII. Id.
In contrast, Greene wholly has failed to plead plausible allegations of an employment relationship with Harris. Although Eurest assigned Greene exclusively to clean Harris’ office, Greene’s complaint alleges that she worked there only for a few *164 hours in December 2010, undermining any contention that she developed an employment relationship with Harris over the course of an ongoing work assignment. The limited facts that Greene offers to support her allegation of an employment relationship are: (1) Harris provided the cleaning supplies for Eurest janitors, (2) Harris had the ability to interview prospective janitorial workers provided by Eurest, “evaluate” Eurest personnel, “accept or reject any individual(s) based upon their experience,” and request that Eurest remove a person from the Harris assignment “for cause,” (3) an on-site Harris employee supervised Eurest cleaning personnel, and (4) Harris selected the days on which Greene would work at its office.
These allegations are based largely on the contract between Eurest and Harris. Because the full contract was not made a part of the present record, we are unable to evaluate the full context of the parties’ relative contractual responsibilities. Greene has not identified in her complaint how the cited contractual px-ovisions were applied in practice to her, other than the fact that a Harris employee was named as her on-site supervisor. Under the terms of the Eurest-Hairis contract, Harris and its on-site supervisor regularly would “review effectiveness” of Eurest janitorial workers. And, notably, Greene does not allege that she actually met with or received any direction from any Hands supervisor during the few hours in December 2010 that she was present at Harris’ facility. Construing the allegations most favorably to Greene, we conclude that the “effectiveness review” provision included in the contract does not amount to the “day-to-day supervision” controlling the manner in which work would be completed, which we found relevant in Butler. See Butler, 793 F.3d at 414-15.
Greene also has not alleged that her duties were related to Harris’ business product, or that she performed work that also was undertaken by Hams employees. Nor has she plausibly alleged that Eurest or Hands intended that their contractual agreement establish any type of employment relationship between Eurest employees and Harris. See generally id. at 414.
Although Greene alleges that Harris possessed some control over which Eurest employees were assigned to Harris’ contract, we conclude that these allegations alone do not establish an employment relationship between Greene and Harris. Our concern with the putative employer’s authority to hire and fire in Butler arose from the circumstances of the staffing agency-client relationship, namely, that the client could terminate staffing agency employees who were performing the work of the client, as it could its own direct employees. In contrast, here, Harris’ authority to approve or reject Eurest employees arises from its authority to ensure that the services contract is performed to Harris’ satisfaction.
The factors set forth in Butler are not intended for mechanical application, but instead provide a framework to elicit the true nature of a putative employment relationship. In the present case, considering all the facts alleged in Greene’s complaint, we conclude that the contractual arrangement between Eurest and Hands is not analogous to the staffing agency-client relationship that supported our conclusion of a joint employment relationship in Butler. Instead, the contractual provisions cited by Greene describe a contract for janitorial services between a vendor of those services and its business client. We therefore hold that the district court did not err in concluding that Greene failed to state a claim of discrimination on which relief can be granted.
*165 Apart from this conclusion, we observe that the conduct alleged in Greene’s complaint is egregious in nature. However, allegations of animus or discriminatory behavior cannot create an employment relationship when such a relationship has not otherwise been pleaded. Although remedial in nature, see Butler, 793 F.3d at 409, anti-discrimination laws do not provide a remedy for all reprehensible conduct in society. See, e.g., HOC § 12.208, 1(d) (limiting the Code’s remedial scheme to employers with five or more employees); cf. Cilecek v. Inova Health Sys. Servs., 115 F.3d 256, 257-58 (4th Cir. 1997) (concluding that an independent contractor was not entitled to protection under Title VII). Thus, while future changes in the law may provide a remedy for such conduct as that alleged in Greene’s complaint, this Court cannot create a remedy simply because it wants to achieve that result.
We also emphasize that because Greene did not challenge in her complaint Harris’ earlier decision, in March 2010, to terminate her longstanding contract with Harris, we have not considered any indicia of employment that may have been present in that prior relationship. Thus, we necessarily have decided only the ease that Greene has set before us.
B.
Greene next argues that the district court erred in dismissing her claim under Maryland law for tortious interference with a business relationship. She contends that Pierce tortiously interfered with her business relationship with Eurest, by defaming her[5] in falsely stating to Eurest personnel that Harris previously had barred her from its premises. We disagree with Greene’s argument.
To state a claim under Maryland law for tortious interference with a business relationship, a plaintiff must allege:
(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.
Painter’s Mill Grille, LLC v. Brown, 716 F.3d 342, 354 (4th Cir. 2013) (quoting Alexander & Alexander Inc, v. B. Dixon Evander & Assocs., Inc., 336 Md. 635, 650 A.2d 260, 269 (1994)). In presenting a claim of this nature, the plaintiff must show that a defendant engaged in wrongful conduct, such as defamation or other common law tort. Alexander & Alexander, 650 A.2d at 271. A plaintiff asserting defamation bears the burden of proving that the challenged statement was “not substantially correct.” Batson v. Shiflett, 325 Md. 684, 602 A.2d 1191, 1210, 1212 (1992).
We conclude that Greene has not alleged facts raising a plausible inference that Pierce’s statement, that Greene had previously been barred from Harris’ office, was false. In her complaint, Greene acknowledges that her original contract was terminated effective March 31, 2010, and that Pierce “immediately had Harris security escort her from the premises” upon observing her at the office on December 6, 2010. Accordingly, Greene’s own pleading refutes her assertion that Pierce’s statement in December 2010, regarding Greene’s exclusion from the premises, was not “substantially correct.” Batson, 602 A.2d at 1212. Thus, because Greene’s tor-tious interference claim rested on the pur *166 ported falsity of that one statement, we conclude that the district court properly dismissed the claim under Rule 12(b)(6).[6]
III.
For these reasons, we affirm the district court’s judgment.
AFFIRMED

. Because the district court dismissed the complaint under Rule 12(b)(6), we accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Coleman v. Md. Court of Appeals, 626 F.3d 187, 189 (4th Cir. 2010).

. In her complaint, Greene alleges that Pierce noticed her working at the office on December 6, 2010, and had her removed from the premises the same day. During the administrative investigation conducted by the Howard County Office of Human Rights, however, *162 Greene stated that she worked at Harris for four days in December 2010.- This discrepancy does not affect our analysis of the sufficiency of Greene’s complaint.

. Greene originally filed her complaint in the Circuit Court for Howard County, Maryland. Harris removed the case to the United States District Court for the District of Maryland.

. Maryland State Government Code § 20-1202(b) authorizes “a person that is subjected to a discriminatory act prohibited by the county code [to] bring and maintain a civil action against the person that committed the ■ alleged discriminatory act for damages, in-junctive relief, or other civil relief.”

. Although Greene did not allege defamation explicitly in her complaint as a basis for her tortious interference claim, she did allege that Pierce made a false statement to Eurest, and argued a defamation theory before the district court and on appeal.

. Greene’s tortious interference claim also fails on the separate ground that Pierce’s alleged statement was not defamatory. To qualify as defamatory, a statement must ‘'tend[] to expose a person to public scorn, hatred, contempt, or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person.” Batson, 602 A.2d at 1210. Pierce’s statement that Greene was barred from Harris’ office falls well short of this standard.