**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 21-1044

_____

DANIEL BITTLE-LINDSEY,

Plaintiff - Appellant,

v.

SEEGARS FENCE COMPANY, INC.; SEEGARS FENCE COMPANY, INC. OF NEWPORT,

Defendants - Appellees.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  Terrence W. Boyle, District Judge.  (4:19-cv-00040-BO)

_____

Argued:  March 10, 2022                              Decided:  May 18, 2022

_____

Before WYNN, HARRIS, and RICHARDSON, Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Wynn wrote the opinion, in which Judge Harris and Judge Richardson joined.

_____

**ARGUED:**  Craig Patrick Hensel, HENSEL LAW, PLLC, Greensboro, North Carolina, for Appellant.  Katie Weaver Hartzog, HARTZOG LAW GROUP LLP, Raleigh, North Carolina, for Appellees.  **ON BRIEF:**  Katherine M. Barber-Jones, HARTZOG LAW

GROUP LLP, Raleigh, North Carolina, for Appellees.

————————————

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Plaintiff Daniel Bittle-Lindsey sued Defendants Seegars Fence Company, Inc. of Newport ("Newport") and Seegars Fence Company, Inc. ("Seegars") for violations of the Americans with Disabilities Act ("ADA"). The district court granted Defendants' motion for summary judgment, finding that Bittle-Lindsey could not satisfy the ADA's numerosity requirement. We affirm.

I.

Bittle-Lindsey worked as a fence installer for Newport from April to August 2015. Newport is a small North Carolina corporation that offers fence-installation services to residential and commercial customers in Newport, North Carolina, and the surrounding region. Bittle-Lindsey alleges that during his employment with Newport, he was subject to disparate treatment and retaliation because of his HIV-positive status, leading to his demotion and ultimate termination. In March 2019, he brought claims against Newport under the ADA. *See* 42 U.S.C. §§ 12101–12213 (as amended).

Plaintiffs pursuing an ADA claim must be able to show that their employer is a person or entity "engaged in an industry affecting commerce who has [fifteen] or more employees for each working day in each of [twenty] or more calendar weeks in the current or preceding calendar year." *Id.* § 12111(5)(A). This fifteen-employee numerosity requirement is a threshold element of an ADA claim. *See Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 155 (4th Cir. 2012) (holding the ADA's employee threshold is "an element of the claim itself" (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006) (Title VII case))). That requirement presented an obstacle for Bittle-Lindsey's ADA claim because

Newport employed fewer than fifteen people during his employment. *See* J.A. 683–95[1] (quarterly tax and wage reports listing fewer than fifteen employees at Newport between April and August 2015).

To overcome that obstacle, Bittle-Lindsey also sued Newport's affiliated entity, Seegars. Seegars is a family-run business with ownership and management shared by members of the Seegars family—Neal Weston Seegars; his children Benjamin, John, and Sallie; and the family of Sallie's husband, Robert Batchelor. Members of the Seegars family created independently owned corporations (the "Seegars-affiliated entities" or "entities") in each local market where they provided fence-installation services. Seegars has 40 employees, and combined, Seegars and the entities collectively have approximately 276 employees.

To date, there are approximately fourteen entities, including Newport. Seegars refers to them as "branches," and most of their names begin with the phrase "Seegars Fence Company" followed by the name of the city (e.g., "Seegars Fence Company, Inc. of Newport"). Ownership interest in each entity is shared by one or more members of the Seegars family as well as various other individuals.[2] But no entity has precisely the same ownership structure as any other entity. Further, Seegars provides business development and operational support to Newport and the other Seegars-affiliated entities,[3] but this

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[2] Benjamin Seegars, John Seegars, and Robert Batchelor together own fifty percent of Newport's shares. Another individual, Clinton Rouse, owns the other fifty percent.

[3] These services include: (1) searching for public-bid opportunities; (2) streamlining and minimizing the costs of marketing (including hosting a website and "888" phone

4

arrangement is not designed to generate profits for Seegars or make any money beyond covering their overhead costs.[4]

Nevertheless, Bittle-Lindsey claimed Newport was a "mere instrumentality" of Seegars and/or its common shareholders. J.A. 13. Accordingly, he asked the court to disregard Newport's corporate form and pierce the corporate veil, thereby allowing him to proceed against *both* Newport and Seegars as his employers. If permitted, this veil piercing would allow Bittle-Lindsey to meet the numerosity requirement.

Following the completion of the first phase of discovery,[5] Defendants moved for summary judgment on the veil-piercing claim. After a hearing, the district court granted the motion. *See Bittle-Lindsey v. Seegars Fence Co.*, No. 4:19-cv-40-BO, 2020 WL 7265367, at *1–4 (E.D.N.C. Dec. 10, 2020). Bittle-Lindsey timely appealed.

## II.

We review the district court's summary judgment ruling de novo, "applying the same standard applied by the district court." *Reynolds*, 701 F.3d at 149. Summary judgment

---

number, as well as providing brochures); (3) advertising job openings (but not screening, interviewing, or hiring prospective employees); (4) providing business analytics; (5) wholesale buying and fabricating installation materials (such as fences and finished items); (6) providing information-technology services; (7) providing financial, insurance, and safety-officer services; and (8) providing specialized equipment that an entity can rent. Seegars also provides a number of model templates that the entities may choose to use and customize (e.g., template handbook forms, contract proposal forms, and letterhead).

[4] The entities pay Seegars for services either by paying a markup for materials Seegars provides to the entity, or by splitting shared costs among all the entities for certain services shared by all (e.g., website design).

[5] Discovery was separated into two phases. Phase I was for "pre-merits discovery" to resolve the question of whether Newport or Seegars, or both, were an "employer" under the ADA, and Phase II was for "merits discovery." J.A. 616.

is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). A "genuine" issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, we are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Reynolds*, 701 F.3d at 149.

## III.

Bittle-Lindsey contends that the district court erred in not piercing the corporate veil to hold Seegars to be his employer for ADA purposes.[6] We disagree.

The "ambiguity of the term employer in . . . civil rights statutes" like the ADA "has driven courts to fashion a variety of tests" to determine whether an entity "that does not

---

[6] Bittle-Lindsey initially also claimed that there was a genuine dispute as to whether Newport alone met the numerosity requirement. *See* Opp'n to Defs.' Mot. for Summ. J. at 3, *Bittle-Lindsey v. Seegars Fence Co.*, No. 4:19-cv-00040-BO (E.D.N.C. July 27, 2020) (arguing against summary judgment because "a reasonable jury could find that . . . Newport employed at least fifteen employees"); Opening Br. at 19 (arguing that Newport's number of employees is a disputed fact). However, because Bittle-Lindsey abandoned this argument at the hearing before the district court and oral argument before this Court, we focus solely on the issue of whether Seegars is an ADA employer if we pierce Newport's corporate veil. *See Bittle-Lindsey*, 2020 WL 7265367, at *2 ("[D]uring the hearing, [P]laintiff . . . admitted that the only way to receive relief in this action is for the Court to decide to pierce the corporate veil and proceed against both [D]efendants jointly."); Oral Argument at 00:41–01:12, *Bittle-Lindsey v. Seegars Fence Co.* (No. 21-1044), https://www.ca4.uscourts.gov/OAarchive/mp3/21-1044-20220310.mp3 (Bittle-Lindsey's counsel confirming that he was abandoning the claim against Newport as sole employer and focusing on the claim against Seegars, together with Newport, as an ADA employer).

directly employ the plaintiff may still be considered an employer under" the statute. *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999) (Family and Medical Leave Act case), *abrogated on other grounds by Arbaugh*, 546 U.S. 500. One such test is the "'integrated employer' test." *Id.* While we have declined to adopt that "mechanical" test "in every instance," we have noted that its "factors all point to the ultimate inquiry of . . . domination" by one entity over another entity. *Id.* at 442 n.7 (quoting *Johnson v. Flowers Indus.*, 814 F.2d 978, 981 n.* (4th Cir. 1987) (Age Discrimination in Employment Act case)). Further, we have never explicitly rejected it for labor and employment cases. *See id.*; *cf. Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 408 n.3 (4th Cir. 2015) (suggesting the ongoing viability of the "integrated employer" test in a Title VII case). Here, we believe the integrated employer test provides useful guidance to determine whether Seegars "controls [Newport's] employment decisions or so completely dominates [Newport] that the two corporations are the same entity."[7] *Johnson*, 814 F.2d at 980.

For our consideration, the "integrated employer" test sets forth four factors: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." *Hukill*, 192 F.3d at 442. Although "no single factor [of the "integrated employer" test] is conclusive," the

---

[7] The district court did not use the "integrated employer" test, opting instead to apply "basic veil-piercing principles" under federal common law and North Carolina law. *Bittle-Lindsey*, 2020 WL 7265367, at *2–4 (holding that Bittle-Lindsey failed to show that Seegars "used control [over Newport] to affect a fraud or wrong or that such control and breach proximately caused [his] harm," and therefore rejecting Bittle-Lindsey's argument to pierce the corporate veil). We do not hold that this was error. *See Johnson*, 814 F.2d at 981 n.* ("We need not adopt such a mechanical ['integrated employer'] test in every instance . . . .").

7

third—centralized control of labor operations—is "the most critical." *Id.* And in the case before us, "there is no overlap in personnel between the defendants, as . . . Newport's employees have never directly or indirectly worked for" Seegars. *Bittle-Lindsey*, 2020 WL 7265367, at *4. Further, Seegars "has no involvement in the management, control, or oversight of Newport's employees." *Id.* In fact, Newport's largest shareholder, Clinton Rouse, "exercises unilateral control of [Newport's] day-to-day operations." *Id.* This includes making all employment decisions, such as hiring, supervising, and firing Bittle-Lindsey. Accordingly, "there is little evidence, if any, that the control of [Newport's] labor operations was centralized" with Seegars. *Hukill*, 192 F.3d at 444.

The other factors of the "integrated employer" test weigh heavily against veil piercing as well. Regarding common management, Newport operates with complete autonomy as to all operations, with no oversight from Seegars—Seegars does not set any rules or standards for Newport or the other entities. In fact, "Newport is free to market, brand, advertise, and otherwise promote its services without coordinating with or seeking or receiving any authorization from" Seegars. *Bittle-Lindsey*, 2020 WL 7265367, at *4. Rouse is the only manager of Newport and there is no evidence of common management between Newport and Seegars.

As for the interrelation of operations, "[D]efendants do not share office space"; rather, Newport "rent[s] its own space from an entity unaffiliated with" Seegars. *Id.* Although the Seegars-affiliated entities "hold themselves out collectively for marketing purposes," they are not required to pool their resources with, or accept any support from, Seegars, and those that do can opt out anytime. J.A. 44. Seegars provides the entities with

8

information and services, and the entities have discretion whether to use the information or not—Seegars provides guidance, not oversight or direction. Moreover, "Newport pays relatively minimal fees to . . . Seegars for its services," *Bittle-Lindsey*, 2020 WL 7265367, at \*4, which "is not unusual in today's business climate and is of no consequence," *Hukill*, 192 F.3d at 443. The "evidence indicat[es] that each company operates separately and distinctly." *Id.*

Finally, regarding common ownership and financial control, Newport and Seegars have "common, though not identical, ownership," as members of the Seegars family have overlapping interests in both companies. *Id.* at 444; *see also* J.A. 431–32 (ownership and management chart of Seegars and the Seegars-affiliated entities showing that different members of the Seegars family hold varied ownership and management interests in the entities). However, this is "not enough" to establish that the entities are an "integrated employer." *Hukill*, 192 F.3d at 444 (rejecting an integrated-employer claim even though one individual was the majority shareholder of all eight of the affiliated companies at issue); *cf. Johnson*, 814 F.2d at 982 ("One-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil." (quoting *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 691 (5th Cir. 1985))). Further, "Newport is fully capitalized as an independent business that generates a healthy profit," and "Newport pays dividends to its owners, which are distributed proportionately based on ownership shares." *Bittle-Lindsey*, 2020 WL 7265367, at \*4. "[T]here is no intermingling of funds" between Defendants or

9

among other Seegars-affiliated entities, and "only . . . Rouse can authorize expenditures for . . . Newport." *Id.*

In sum, "applying the 'integrated employer' test in this case does not yield the conclusion that [Newport] was part of a larger integrated employer that included [Seegars]." *Hukill*, 192 F.3d at 443. Ultimately, the test "instructs a court to determine 'what entity made the final decisions regarding employment matters related to the person claiming discrimination.'" *Id.* at 444 (alterations omitted) (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)). Here, we hold that "no entity other than [Newport] made the final decision regarding [Bittle-Lindsey's] employment status." *Id.*

## IV.

For the reasons set forth, we affirm the judgment of the district court declining to pierce the corporate veil and concluding that Bittle-Lindsey cannot satisfy the numerosity requirement in order to move forward with his ADA claims.

*AFFIRMED*

10