**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1215**

MARIE M. MCCRAY,

        Plaintiff - Appellant,

    v.

MARYLAND DEPARTMENT OF TRANSPORTATION, Maryland Transit
Administration,

        Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Ellen L. Hollander, District Judge.
(1:11-cv-03732-ELH)

Argued:  December 10, 2013        Decided:  January 30, 2014

Before KING, GREGORY, and FLOYD, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published
opinion.  Judge Gregory wrote the opinion, in which Judge King
and Judge Floyd joined.

**ARGUED**: John Henry Morris, Jr., LAW OFFICE OF JOHN H. MORRIS,
JR., Baltimore, Maryland, for Appellant.  Jennifer L. Katz,
OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland,
for Appellee.  **ON BRIEF**:  Douglas F. Gansler, Attorney General
of Maryland, Eric S. Hartwig, Assistant Attorney General, OFFICE
OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for
Appellee.

GREGORY, Circuit Judge:

Appellant Marie McCray worked for the Maryland Transit Administration ("MTA"), a subsidiary of the Maryland Department of Transportation ("MDOT"), for nearly four decades before her position was terminated because of budget cuts. McCray brought this action in federal district court alleging various forms of discrimination. The district court dismissed McCray's suit on legislative immunity grounds before any meaningful discovery could be conducted. We find that McCray's complaint alleges discriminatory conduct that occurred before any legislative activity. Because McCray's case was dismissed before she had the opportunity to discover evidence necessary to her claims, we conclude that this dismissal was premature under Rule 56(d) of the Federal Rules of Civil Procedure. However, we find that McCray's age discrimination and disability discrimination claims are barred by sovereign immunity. We affirm in part, vacate in part, and remand.

I.

Marie McCray began working for the Maryland Transit Authority, a precursor of the MTA, in 1971.[1] Her principal duty

---

[1] Because this is an appeal from a summary judgment order, we present the facts in the light most favorable to the non-movant. Robinson v. Clipse, 602 F.3d 605, 607 (4th Cir. 2010).

2

was to assemble an annual rider usage report for trains and buses. For three decades, she worked without incident and received no complaints from supervisors.

McCray was diagnosed with diabetes in 1995, but the illness had no effect on her job performance until 2007. In June of that year, co-workers discovered her after she fainted on the floor near her desk. She was taken to the hospital in an ambulance and treated for low blood sugar. She was discharged the same day and returned to work one week later.

After the incident, McCray's supervisor hectored her about her fitness and questioned her ability to work. It is this supervisor, Michael Deets, whose behavior is the core of McCray's claims. Deets confronted McCray ceaselessly, even after she provided written documentation from her doctors establishing her medical fitness. Eventually, Deets and a human resources official demanded that McCray submit to an independent medical examination. This independent doctor confirmed what McCray's doctors found: the diabetes would have no impact on her work. Nonetheless, Deets continued to plague McCray with questions about her health.

In January of 2008, McCray's principal job—the annual usage report—was transferred to a consultant, and McCray was left without significant work. Other employees in her unit were

overwhelmed with work, but when McCray requested more responsibilities, she was denied.

In October of 2008, McCray was summoned to a meeting with Deets, who informed her that her position was abolished as part of a series of budget cuts in Maryland. In 2008, the Governor and Board of Public Works cut roughly 830 state positions to meet a budget shortfall.

McCray filed a claim with the United States Equal Employment Opportunity Commission ("EEOC"), alleging discrimination under Title I of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12113, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. She alleged that her position was cut because of discriminatory animus due to her race, gender, age, and disability.

Before any meaningful discovery was conducted, the MTA and MDOT filed a motion to dismiss. The agencies argued that because McCray's position was cut pursuant to a state budget decision, legislative immunity blocked the lawsuit. At this point, McCray had not had an opportunity to gather information that was integral to her case. She had no evidence about how different positions were chosen for elimination, or on how many individuals with disabilities were employed by the MDOT or MTA.

4

As such, she moved under Rule 56(d) of the Federal Rules of Civil Procedure for more time to conduct discovery.

The district court converted the MDOT and MTA's motion into a motion for summary judgment and then dismissed McCray's claims. The court found that because her position was terminated pursuant to budget cuts, any lawsuit based on that termination was blocked by legislative immunity. Further, any discovery that McCray would conduct would be immaterial to the legislative immunity issue. "Because [McCray's] proposed discovery relates to the motives of individual employees within the MTA and the MDOT," the district court reasoned, "McCray has not identified any factual issue pertinent to . . . legislative immunity" that remained in dispute. J.A. 110. As such, the court also denied McCray's 56(d) motion. McCray filed a timely appeal, and we have jurisdiction under 28 U.S.C. § 1291.

II.

The MDOT and MTA argue that sovereign immunity bars McCray's age and disability discrimination claims. This argument is correct. "[A]n unconsenting State is immune from suits brought in federal courts by her own citizens." Edelman v. Jordan, 415 U.S. 651 (1974). This protection extends to state agencies. See Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997). Therefore, absent abrogation of sovereign

5

immunity or consent from Maryland, McCray cannot seek injunctive or monetary relief from the MDOT or MTA. See Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363–64 (2001). Sovereign immunity has not been abrogated for ADEA claims and ADA Title I claims. See id. at 374 (ADA Title I claims); Kimel v. Fla Bd. of Regents, 528 U.S. 62 (2000) (ADEA claims); cf. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 489–90 (recognizing abrogation of sovereign immunity for Title II claims but not Title I claims). Thus, absent waiver of sovereign immunity, McCray's ADEA and ADA claims must be dismissed.

The MDOT and MTA raise their sovereign immunity argument for the first time on appeal. McCray argues that the MDOT and MTA waived this argument. We disagree. Our case law is clear that "because of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even sua sponte." Suarez Corp. Indus. v. McGraw, 125 F.3d 222, 227 (4th Cir. 1997). The Supreme Court has allowed sovereign immunity to be claimed for the first time before a Court of Appeals. Edelman, 415 U.S. at 677–78 ("[T]he Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court."). There are limits to how long a state may wait before claiming immunity. For example, if a state loses a case on the merits

6

after extensive discovery has taken place, it is inappropriate for the state to then claim sovereign immunity. Ku v. Tennessee, 322 F.3d 431, 435 (6th Cir. 2003). As stressed by McCray, however, this case has not advanced to the discovery stage. Given the preliminary stage of the case, it is not too late for the MDOT and MTA to raise their sovereign immunity defense, even though it is raised before us for the first time. Thus, we affirm the district court's rulings on McCray's ADEA and ADA claims, albeit based on sovereign immunity, not legislative immunity.

### III.

For McCray's remaining Title VII claim, the key question is whether the district court erred in dismissing McCray's action before she could conduct discovery. In general, summary judgment should only be granted "after adequate time for discovery." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask. For this reason, when a party lacks material facts necessary to combat a summary judgment motion, she may file an "affidavit or declaration that, for specified reasons, [the party] cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). In response, the district court may defer

7

consideration of the summary judgment motion, deny the motion, or "issue any other appropriate order." Id.

We review a district court's 56(d) ruling for abuse of discretion. Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002). A Rule 56(d) motion must be granted "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986)). Further, such motions are "broadly favored and should be liberally granted" in order to protect non-moving parties from premature summary judgment motions. Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (quoting Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010)).[2]

Absent the legislative immunity consideration, McCray's 56(d) motion succeeds with ease. At the time of the summary judgment motion, McCray had not had the opportunity to depose supervisors at the MDOT and MTA. She had no information on how positions were chosen for termination or why other positions were kept. Without such information, it would be impossible for her to make an argument that she was fired because of

---

[2] The language of Rule 56(d) appeared in Rule 56(f) before amendments in 2010, but these amendments made no substantial change to the rule. Id. at 375 n.6.

8

discriminatory reasons. As we have emphasized, 56(d) motions for more time to conduct discovery are proper in cases such as this one, where the main issue is one of motive and where most of the key evidence lies in the control of the moving party. See Harrods, 302 F.3d at 246–47 (citing Illinois State Employees Union v. Lewis, 473 F.2d 561, 565–66 (7th Cir. 1972)). Again, evidence of how defendants selected McCray's position (and other positions) for termination go to the crux of McCray's race discrimination claims. Absent discovery, she has no adequate access to this evidence, and therefore no way to shield herself from a premature summary judgment motion.

Further, many factors counseling against granting a 56(d) motion are absent here. Non-movants must generally file an affidavit or declaration before they can succeed on a 56(d) motion, or if not, non-movants must put the district court on notice as to which specific facts are yet to be discovered. Nader v. Blair, 549 F.3d 953, 961 (4th Cir. 2008). In this case, McCray filed such a declaration and identified the material she needed to discover. J.A. 93–95. Similarly, non-movants do not qualify for Rule 56(d) protection where they had the opportunity to discover evidence but chose not to. Harrods, 302 F.3d at 246 (noting that non-movant was entitled to 56(d) protection in part because it "was not dilatory in pursuing discovery"). There is no indication that McCray's inability to

9

gather evidence was due to her own delay. In sum, if we set the legislative immunity argument aside, this case is an easy one: McCray's 56(d) motion should be granted.

However, as the district court noted, legislative immunity complicates the issue because the evidence that McCray has yet to discover "is not material to whether defendants are entitled to legislative immunity." J.A. 110. This assertion is correct, but we nonetheless vacate, because McCray's complaint alleges discriminatory actions that occurred well before any legislative activity. For this reason, this behavior cannot be protected by legislative immunity, so the Rule 56(d) denial was premature.

A legislative immunity finding is a legal determination that we review de novo. Kensington Volunteer Fire v. Montgomery Cnty., 684 F.3d 462, 470–71 (4th Cir. 2012). Legislative immunity protects those engaged in legislative functions against the pressures of litigation and the liability that may result. See E.E.O.C. v. Wash. Suburban Sanitary Comm'n, 631 F.3d 174, 181 (4th Cir. 2011) [hereinafter Washington Suburban]. "The practical import" of legislative immunity "is difficult to overstate." Id. It prevents those who were defeated in elections from waging political war through litigation. Id. It promotes a healthier, more thriving class of politicians by ensuring that legislative offices are not limited only to those individuals who are willing to withstand a lawsuit. Id.

10

The protections of legislative immunity extend beyond legislators themselves. Bogan v. Scott-Harris, 523 U.S. 44, 49, 55 (1998). The determination of legislative immunity is based on the function being fulfilled—not the title of the actor claiming immunity. Kensington, 684 F.3d at 470. Actions that qualify as legislative "typically involve the adoption of prospective . . . rules that establish a general policy affecting the larger population. They also generally bear the outward marks of public decisionmaking." Washington Suburban, 631 F.3d at 184 (internal quotations marks, citations and alteration omitted). Accordingly, this Court has had "no trouble concluding that enacting a budget is a legislative act." See Kensington, 684 F.3d at 471. Also relevant to this case, the Supreme Court has noted that "the termination of a position . . . unlike the hiring or firing of a particular employee, may have prospective implications" and is therefore more likely to be legislative. Bogan, 513 U.S. at 56. In this case, both parties accept that McCray's position was terminated due to budget-making.[3]

---

[3] The government action in this case was carried out by the Governor and Board of Public Works—not the legislature. By statute, Maryland law allows for limited budget cuts by action of the Governor and Board of Public works. Md. Code Ann., State Fin. & Proc. § 7-213(a). The Maryland constitution gives the governor a central role in cutting the budget when revenue falls short. Judy v. Schaefer, 627 A.2d 1039, 1049 (Md. 1993). One (Continued)

11

Finally, and most helpful to the MDOT and MTA, our case law shows that legislative immunity extends to those individuals who advise legislators. Kensington, 684 F.3d at 471; Baker v. Mayor & City Council of Balt., 894 F.2d 697, (4th Cir. 1990) (applying legislative immunity to a government department that recommended that a position be cut pursuant to a mayor's request), overruled on other grounds by Berkley v. Common Council of the City of Charleston, 63 F.3d 295, 303 (4th Cir. 1995); see also Baraka v. McGreevey, 481 F.3d 187, 196–97 (3d Cir. 2007) (holding that governor's appointee's actions in "advising and counseling Governor McGreevey and the Legislature are also legislative" and protected under legislative immunity). This case law stands for the proposition that just as a legislator is immune from discrimination lawsuits when she makes budget decisions based on improper animus, aides to that legislator are also immune. Legislative immunity is a shield that protects despicable motives as much as it protects pure ones. For this reason, the district court's conclusion is correct insofar as it shields the

---

could argue that the budget cuts were therefore executive in nature, not legislative. We need not decide this thorny question, however, because our holding that the Rule 56(d) motion should have been granted rests on our finding that McCray's lawsuit targets discrimination that occurred before any legislative activity occurred.

12

MTA and MDOT from lawsuit based on the counsel they gave executive officials in Maryland who carried out the budget cuts.

Nonetheless, we vacate and remand because the complaint alleges discriminatory actions that took place before the legislative activity began. Our ruling in Washington Suburban guides our decision today. In that case, former municipal employees brought an age discrimination claim with the EEOC against a local government agency, the Washington Suburban Sanitation Commission ("WSSC"). Washington Suburban, 631 F.3d at 177. In late 2005, the WSSC's Chief Information Officer conducted an assessment of the Information Technology department and concluded that it should be restructured, with several positions eliminated. Id. The restructuring required an increased budget, so WSSC executives met in 2006 and agreed to submit the new proposed budget to local legislators. Id. These legislators met to discuss the budget and sought advice from WSSC executives. Id. The legislators ultimately reached no decision on the proposal, which allowed the restructuring to go into effect by operation of law. Id.

The EEOC investigated the WSSC and requested information about how the Chief Information Officer selected positions for termination. This Court allowed the subpoena to be enforced. Id. at 185. Part of the basis for our decision was that the EEOC's investigation was aimed at discriminatory actions taken

13

prior to and after the restructuring. Id. at 183. "In particular, the EEOC can continue with its stated current investigatory goals—determining whether WSSC discriminated in distributing training prior to the restructuring and whether it discriminated in hiring after the restructuring." Id. Inquiries into how the WSSC developed its budget would be problematic, as would inquiries into the legislators' deliberations on the proposal, because these actions were legislative ones that were protected by legislative immunity. Id. at 183–84. We upheld the subpoena, however, because the investigation was aimed at discriminatory behavior prior to and after these legislative actions.

As in Washington Suburban, McCray alleges discriminatory behavior that occurred before any legislative action took place. Per her complaint, her supervisor at the MTA stripped her of responsibilities in the years leading up to budget cuts. Even though her department was overwhelmed with work, her supervisor refused to give McCray additional responsibilities, even after she asked for more work. Thus, by the time of the 2008 budget crisis which led to the termination of McCray's position, Deets' actions had already made McCray vulnerable and therefore adversely affected her. McCray alleges her termination was a foregone conclusion because her supervisor—driven by discriminatory animus—stripped her of her duties. Had the

14

legislature simply terminated McCray's position, that action would be shielded by legislative immunity. Similarly, if McCray's supervisors advised the legislature to terminate her position because of discriminatory animus, this too would be protected by legislative immunity. In this case, however, McCray's allegation is that she was subject to discriminatory adverse employment actions that made her position vulnerable to the budget cuts that eventually came, and she alleges that these actions were taken before any legislative activity. See Crady v. Liberty Nat. Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993) (defining a tangible employment action for ADEA purposes as including an employer giving an employee "significantly diminished material responsibilities") (cited with approval in Burlington Indus, Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). Put another way, the basis of McCray's lawsuit is not the financial storm that rocked the state and forced Maryland's government to scale back its budget. Rather, her claim is that the MTA and MDOT gave her a lightning rod to hold and sent her to the roof.

This case presents a more difficult situation than Washington Suburban, which involved a subpoena during an initial investigation, rather than a lawsuit. We explicitly noted this distinction in Washington Suburban. "The threat to legislative immunity and privilege in [full-blown lawsuits] is more acute

15

than it is here." Washington Suburban, 631 F.3d at 182–83. However, the importance of this point in Washington Suburban lends support to our ruling here. We drew attention to the early stage of the proceedings in that case because it was unclear whether the investigation would ever ripen into a case threatening legislative immunity. Id. at 183 ("We also cannot assume the EEOC's investigation will follow the path WSSC projects."). In other words, a legislative immunity holding is premature if the case might evolve in a way that poses no threat to legislators. McCray's case is far past the investigatory stage, but it focuses on behavior occurring before any legislative action. Thus, while the case here has advanced beyond the stage considered in Washington Suburban, the cases are similar because McCray's lawsuit has not yet implicated legislative immunity and need not develop in a way that would pose a threat to legislators.

In sum, we conclude that the Rule 56(d) motion should have been granted because McCray's lawsuit is aimed at discrimination that occurred before any legislative activity began. This is crucial to our 56(d) holding, because if legislative immunity were to apply, then the discovery that McCray requests would be irrelevant: her lawsuit would be barred regardless of whether the MDOT and MTA helped terminate her position because of discriminatory animus. However, because McCray's lawsuit

16

alleges discrimination occurring before any legislative activity, the summary judgment dismissal was premature.

## IV.

Because summary judgment was granted before Appellant had a chance to discover facts essential to her claim, and she alleged discrimination occurring before any legislative activity, the district court's Rule 56(d) denial was an abuse of discretion. However, we find that the district court's dismissal of McCray's ADA and ADEA claims are supported by sovereign immunity. Accordingly, this case is

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED.