**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 14-6882**

_____

KORY PUTNEY,

                      Plaintiff - Appellant,

        v.

R. LIKIN, Correctional Officer; J. PHILIP MORGAN, Warden; S.
A. WILSON, Correctional Officer; W. SLATE, Correctional
Officer; R. WATSON, Assistant Commissioner; J. MICHAEL
STOUFFER, Deputy Secretary,

                      Defendants - Appellees.

_____

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  George L. Russell, III, District Judge.
(1:13-cv-01837-GLR)

_____

Argued:  September 15, 2015           Decided:  July 14, 2016

_____

Before GREGORY, Chief Judge, and NIEMEYER and THACKER, Circuit
Judges.

_____

Vacated and remanded by unpublished per curiam opinion.  Judge
Niemeyer wrote a separate opinion concurring in part, dissenting
in part, and concurring in the judgment.

_____

**ARGUED**: Ruthanne Mary Deutsch, GEORGETOWN UNIVERSITY LAW CENTER,
Washington, D.C., for Appellant.  Dorianne Avery Meloy, OFFICE
OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for
Appellees.  **ON BRIEF**: Steven H. Goldblatt, Director, Matthew J.

Greer, Student Counsel, Utsav Gupta, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Brian E. Frosh, Attorney General of Maryland, Stephanie Lane-Weber, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kory Putney ("Appellant") appeals the district court's grant of summary judgment to officials at the Western Correctional Institution ("WCI") (collectively, "Appellees") on his Eighth Amendment claim. After a "shakedown" in his housing unit, Appellant's mattress was removed. Although he was adjudged not guilty of hiding contraband in the mattress, prison officials did not return his mattress for more than four months. Appellant claims the deprivation of his mattress caused lack of sleep, confusion, headaches, backaches, and other infirmities. Appellees moved to dismiss, or in the alternative, for summary judgment. Although Appellant requested discovery, the district court construed the motion as one for summary judgment and granted it without addressing Appellant's discovery request.

We hold that the district court failed to conduct a plenary analysis on the objective prong of Appellant's Eighth Amendment claim, and it erred in failing to grant Appellant's discovery request. We therefore vacate and remand for further proceedings.

I.

A.

We view the facts in the light most favorable to Appellant. See Butler v. Drive Auto. Indus. of Am., Inc., 793

3

F.3d 404, 407 (4th Cir. 2015). At all times relevant to this appeal, Appellant was in the custody of the Maryland Department of Public Safety and Correctional Services and confined at WCI in Cumberland, Maryland.

In November 2010, Appellant was placed in a WCI housing unit designated for disciplinary segregation after he was found guilty of assaulting a correctional staff member (the "November 2010 incident"). Appellant claims that from November 2010 to February 2011, correctional officers ("COs"), including Officer S.A. Wilson, deprived Appellant of a pillow and blanket "as revenge" for the November 2010 incident. J.A. 136.[1]

Then, on June 28, 2011, COs conducted a shakedown in Appellant's housing unit. During the shakedown, COs searched the inmates' mattresses for contraband, usually cutting or damaging the mattresses. Appellant's mattress was damaged and confiscated.[2] Appellees claim that, pursuant to WCI policy, a copy of which is absent from this record, each inmate whose mattress had been removed and/or damaged had to either pay for the mattress, or receive an infraction "ticket" and resolve the

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[2] It appears that Appellant retained his sheets and blanket.

4

matter via a disciplinary hearing. J.A. 137. Appellant chose the latter course.

On July 1, 2011, Appellant's disciplinary hearing was held. He was adjudged not guilty. Appellees claim that a search of Appellant's mattress revealed that his mattress contained a "fishing line," made out of state-issued bed sheets, which inmates often use to pass contraband from cell to cell. See Appellees' Br. 7; J.A. 64. However, they claim that because the infraction ticket listed "someone other than [Appellant] in error," Appellant was found not guilty. J.A. 92. Appellant, on the other hand, claims that he "did nothing to the mattress that was taken from [him] and destroyed." Id. at 36. Viewing the facts in the light most favorable to Appellant, we must proceed under the assumption that he had no contraband in his mattress. In any event, it is undisputed that Appellant was adjudged not guilty of any prison rule violation on July 1.

After the disciplinary hearing, having been found not guilty of any infraction, Appellant asked Wilson for a mattress. Wilson replied, "[Lt. Rodney] Likin is the reason you don't have a mattress and I'm not going to get my ass chewed off for going against Likin's orders." J.A. 137. Appellant claims he also asked Officer W. Slate for a mattress, and although Slate "ensured all [other] inmates were provided a mattress," he

5

"deprived [Appellant of] a mattress as revenge for the November [2010] incident." Id.

Despite the fact that Appellant had been adjudged not guilty, Likin ordered a second infraction ticket to be issued to Appellant on July 6, 2011. At a hearing on July 11, all charges underlying that second ticket were also dismissed. During the July 11 hearing, Slate "spitefully informed [Appellant] that money [that is, payment for the damaged mattress per the purported WCI policy] was not the reason [he] was being deprived [of] a mattress." J.A. 140. This July 11 second not guilty verdict was affirmed by Warden J. Phillip Morgan on July 21.

Meanwhile, Appellant "began suffering [from] headaches from sleeping on cold hard metal." J.A. 183. He also had lower back, neck, and hip pain. In a sick-call request form dated July 11, 2011, Appellant complained, "I am having headaches. Sound (loud) and bright lights are hurting me. It is worse in the morning when I wake up. My mind is confused all day." Id. at 17. On another sick-call request form dated July 17, Appellant complained, "[m]y lower back is hurting. My muscles are tight. My neck is hurting, along my spine . . . ." Id. at 19. WCI physicians prescribed him Amitriptyline Hydrochloride (an antidepressant with sedative effects), Ibuprofen, Baclofen (a muscle relaxer), and Excedrin Migraine. On July 22,

6

Appellant filed yet another sick-call request form, indicating he was still "suffering from headaches and . . . having trouble sleeping" and his "neck, back, and head" were in pain. Id. at 23. In a declaration, Appellant later stated that lying on the "metal [bunk]" made it "hard to sleep," and when he did sleep, he did not sleep "well or long." Id. at 144-45.

On June 28, 2011, Appellant filed a grievance seeking the return of his mattress. On July 28 Warden Morgan dismissed the grievance, explaining, "Your mattress was destroyed as a result of staff retrieving contraband that you had hidden inside of it. . . . [Y]ou will be issued a new mattress when restitution has been made to the institution for destruction of property." J.A. 22. Appellant appealed the dismissal of his grievance, and on October 17, R. Watson, Assistant Commissioner of Corrections, directed Morgan to give Appellant a mattress, explaining, "[Appellant's] appeal has been reviewed and is found meritorious. The investigation revealed [Appellant was] found not guilty of the infraction received on 6/28/11 for destruction of state property and possession of contraband." Id. at 36 (emphasis supplied).

Appellant received a copy of the order directing Morgan to give him a mattress, and he presented it to "every C.O. who would give [him] time"; however, still "none would give

7

[him] a mattress." J.A. 142. Two Inmate Grievance Officers visited the facility on November 3 and "made prison officials give [him] a mattress." Id. at 11, 142. More than four months after Appellant was first adjudged not guilty, prison officials finally complied.

## B.

On June 21, 2013, Appellant filed a pro se complaint pursuant to 42 U.S.C. § 1983 in the District of Maryland. Appellees filed a motion to dismiss, or in the alternative, for summary judgment. They argued that Appellant was deprived a mattress only because he refused to pay restitution, he failed to show any objective injury, and he failed to show that Appellees had a culpable state of mind. Additionally, Appellees claimed qualified immunity.

Appellant, still proceeding pro se, filed an opposition along with a declaration seeking discovery before the entry of judgment. In the opposition, Appellant claimed that he was deprived of his mattress because of Appellees' "malicious behaviors, motivated by revenge" based on the November 2010 incident. J.A. 120, 123. He further urged that prison officials were "deliberate[ly] indifferen[t]" to the injuries he suffered as a result of this deprivation. Id. at 130 (internal quotation marks omitted).

8

The district court construed Appellees' filing as a motion for summary judgment and granted it. Treating Appellant's claim as an Eighth Amendment conditions-of-confinement claim, the district court concluded that Appellees "were aware that [Appellant] was without a mattress long after he was exonerated of disciplinary charges related to its destruction." J.A. 256. Nonetheless, the district court granted summary judgment, reasoning that Appellant could not show an objectively significant physical injury:

> [Appellant] maintains that he still suffers from back pain as a result of sleeping in a cell without a mattress. Medical records indicate that Plaintiff was prescribed Baclofen, Amitriptyline, Ibuprofen, and Excedrin migraine on July 25, 2011. The same record, however, indicates that [Appellant] appeared to be in little to no distress. There are no medical records documenting any continued problems with pain or discomfort during the following months when Plaintiff did not have a mattress. [Appellant] claims that he continues to suffer pain from sleeping on a metal bunk without a mattress. He does not, however, forecast evidence which would establish the injury claimed.

Id. (footnotes and citations omitted). The district court did not address Appellant's discovery request or Appellees' qualified immunity argument.

9

II.

Appellant maintains the district court erred by, inter alia, failing to consider the risk of harm posed by depriving him of a mattress for four months, and by failing to grant his request to pursue discovery before ruling on Appellees' motion. Because we agree that the district court erred on both counts, we vacate and remand.

A.

We first address Appellant's argument that the district court erroneously failed to consider the risk of harm in its Eighth Amendment analysis. We review the district court's legal analysis at summary judgment de novo. See Front Royal & Warren Cty. Indus. Park Corp. v. Town of Front Royal, Va., 135 F.3d 275, 284-85 (4th Cir. 1998) (reversing grant of summary judgment where "district court's analysis stopped short").

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). It "prohibits punishments which, although not physically barbarous, involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime." Rhodes v.

Chapman, 452 U.S. 337, 346 (1981) (citations and internal quotation marks omitted).

When an inmate raises an Eighth Amendment claim based on a prisoner's conditions of confinement,[3] he must first prove he experienced a "deprivation of a basic human need [that] was objectively sufficiently serious." De'Lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (alterations and internal quotation marks omitted) (the "Objective Prong"). Second, the inmate must prove that "subjectively the officials acted with a sufficiently culpable state of mind." Id. (alterations and internal quotation marks omitted) (the "Subjective Prong").

On the Objective Prong, the district court concluded the physical injuries actually suffered by Appellant "do[] not qualify as . . . significant . . . for purposes of a constitutional claim." J.A. 256. This conclusion is incomplete. By focusing only on the injury Appellant actually suffered, the court erred by ignoring the risk of harm posed by depriving someone of a mattress for over four months. We have made clear that a prisoner can satisfy the objective prong of an

---

[3] Appellant attempts to cast his cause of action as an excessive force claim to this court; however, we decline to rule on the propriety of this characterization at this stage. Appellant's arguments on this point may be presented upon remand.

Eighth Amendment claim by showing this "substantial risk of . . . serious harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); see also Raynor v. Pugh, 817 F.3d 123, 127 (4th Cir. 2016); De'Lonta, 708 F.3d at 525; cf. Helling v. McKinney, 509 U.S. 25, 33 (1993) ("We have great difficulty agreeing that prison authorities . . . may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year.").[4] Therefore, on remand, the district court should complete the analysis and consider the risk of harm posed to Appellant.

B.

Next, Appellant contends the district court improperly ruled on Appellees' motion for summary judgment without allowing Appellant to conduct discovery. We give district courts "wide latitude in controlling discovery," and will not disturb a district court's discovery order "absent a showing of clear

---

[4] This court has remanded Eighth Amendment actions in two recent unpublished decisions, directing the district court to address the risk of harm analysis. See Webb v. Deboo, 423 F. App'x 299, 301 (4th Cir. 2011) (per curiam) (concluding that the district court erred by only considering actual injury suffered and not the risk of harm); Thomas v. Younce, 604 F. App'x 325, 326 (4th Cir. 2015) (per curiam) ("Although Thomas may have suffered a relatively minor injury to his knee, the risk of more significant harm from a fall down the stairs (or out of an upper bunk) is obvious.").

12

abuse of discretion." Rowland v. Am. Gen. Fin., Inc., 340 F.3d 187, 195 (4th Cir. 2003) (internal quotation marks omitted); see also McCray v. Md. Dep't of Transp., Md. Transit Admin., 741 F.3d 480, 483 (4th Cir. 2014).

In response to a summary judgment motion, the non-moving party may present an "affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The court may then "defer considering the motion or deny it"; "allow time to obtain affidavits or declarations or to take discovery"; or "issue any other appropriate order." Fed. R. Civ. P. 56(d)(1)-(3). Here, the district court chose the third path, simply ruling on Appellees' summary judgment motion without addressing the discovery request. We find this to be an abuse of discretion.

1.

First, despite Appellees' arguments to the contrary, Appellant's request for discovery was procedurally sufficient.

We have explained a non-moving party "cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996). Along these lines, Appellees contend that Appellant failed to

13

comply with the formal substantive requirements of Rule 56(d). They contend Appellant "failed to specify the reasons why he could not present facts essential to justify his opposition" and "failed to specify the facts he wished to discover." Appellees' Br. 29-30. Appellees' argument fails both legally and factually.

We have not insisted on an affidavit in technical accordance with Rule 56(d) "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary." Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002); see also Nader v. Blair, 549 F.3d 953, 961 (4th Cir. 2008). Harrods explains:

> [I]f the nonmoving party's objections before the district court served as the functional equivalent of an affidavit, and if the nonmoving party was not lax in pursuing discovery, then we may consider whether the district court granted summary judgment prematurely, even though the nonmovant did not record its concerns in the form of a Rule 56[(d)] affidavit.

302 F.3d at 244-45 (citation, footnote, and internal quotation marks omitted). This is especially true where, as here, the non-moving party is proceeding pro se. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed[.]" (internal quotation marks omitted)); cf.

14

Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978) ("What might be a meritorious claim on the part of a pro se litigant unversed in the law should not be defeated without affording the pleader a reasonable opportunity to articulate his cause of action.").

And although Appellant's declaration may not have mentioned Rule 56 or been filed in technical accordance with Rule 56(d), Appellant clearly "made an attempt to oppose the motion on the grounds that more time was needed for discovery." Evans, 80 F.3d at 961. In his opposition to Appellees' motion, Appellant specifically stated that he had "not yet had access to discovery" and that it was "difficult for [him] to get documentation and declarations[,] especially from prisoners and prison officials from the[] Cumberland region, and prisoners who[] have been released." J.A. 119. Further, Appellant's declaration, filed as an exhibit to his opposition, stated, "I need Discovery to uncover information that is essential to my suit." Id. at 147. The declaration delineates nine pieces of evidence Appellant needs but cannot obtain in order to mount an adequate opposition, including:

- The names of "[t]he other inmates who refused restitution but were given another mattress";

15

- "[M]edical" evidence;

- "[C]ircumstances" surrounding the "November 3, 2011" return of his mattress;

- The "WCI policy," which is referred to but not provided as part of the record in this appeal; and

- Information regarding "[t]he July 6, 2011 incidents," in which Likin allegedly ordered a second infraction ticket to be issued to Appellant.

Id. at 147-48. Appellant also gave an explanation as to why he was not more specific: "I fear de[s]cribing what I need because it may disap[p]ear." Id. at 148. This statement should have indicated to the district court that much of the evidence Appellant desired was in the custody of the Appellees, against which Appellant had already made allegations of maliciousness.

Therefore, Appellees' argument that Appellant's submissions were procedurally insufficient is unfounded.

2.

Second, the district court should have, in its discretion, determined that Appellant was entitled to discovery before it ruled on Appellees' motion. Ruling on a summary judgment motion before discovery "forces the non-moving party into a fencing match without a sword or mask." McCray, 741 F.3d at 483. This is especially true where the information requested

16

is in the sole possession of the moving party, and where the district court would be otherwise unable to conduct a proper summary judgment assessment without the requested evidence.

This court has emphasized, "56(d) motions for more time to conduct discovery are proper . . . where most of the key evidence lies in the control of the moving party." McCray, 741 F.3d at 484; see also Harrods, 302 F.3d at 246–47. In Ingle ex rel. Estate of Ingle v. Yelton, for example, we held the district court abused its discretion in denying a Rule 56(d) request where a mother sought videotape evidence, which the police allegedly kept pursuant to department policy, of a police chase that ended in her son's death. See 439 F.3d 191, 193-94 (4th Cir. 2006). We explained, "courts should hesitate before denying Rule 56[(d)] motions when the party opposing summary judgment is attempting to obtain necessary discovery of information possessed only by her opponent." Id. at 196-97; see also Willis v. Town of Marshall, 426 F.3d 251, 263 (4th Cir. 2005) (concluding district court wrongly denied Rule 56(d) request where evidence plaintiff sought was "wholly within the knowledge of" defendant).

Here, essentially all of the evidence Appellant seeks is in the possession of WCI officials, including the names of other inmates who refused restitution but were given mattresses

back anyway, and a copy of the WCI policy upon which WCI officials have relied throughout this litigation. This evidence is not only controlled by Appellees, but also bears on "fact-intensive issues, such as intent" of the moving party. Harrods, 302 F.3d at 244.

Moreover, we cannot fathom how Appellant can mount a successful defense -- nor can we fathom how the district court could properly assess Appellant's claims -- without the discovery Appellant requests. Indeed, requests for discovery are "broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore, 721 F.3d 264, 281 (4th Cir. 2013) (en banc); Ingle, 439 F.3d at 195 (Rule 56 "requires that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." (internal quotation marks omitted) (emphasis supplied)).

For example, on the Eighth Amendment Objective Prong, the district court noted "there are no medical records documenting any continued problems with pain or discomfort during the [] months [after July 25] when [he] did not have a

18

mattress." J.A. 256. But Appellant was not able to conduct discovery to access or present additional records, despite the fact that he requested it. Thus, Appellant was only able to present evidence of injury from a limited three-week period after he was first deprived of his mattress. And disputes of fact remain regarding the extent of Appellant's injuries: even as late as February 2014, Appellant alleged that he "still suffer[s] pain in [his] lower back." Id. at 146; cf. Pisano v. Strach, 743 F.3d 927, 932 (4th Cir. 2014) (finding no abuse of discretion where non-moving party's proposed evidence "would not create a genuine issue of material fact"). We found similar error where a district court granted summary judgment for prison officials, faulting the plaintiff-inmate for "not providing any evidence, other than his own affidavit, to support his allegations," when the court had already stayed his earlier discovery requests. Raynor, 817 F.3d at 130 (alterations and internal quotation marks omitted).

As to the Eighth Amendment Subjective Prong, it is unclear whether the prison's policy (which, again, is not in the record) allows for the return of a mattress after a prisoner is found "not guilty" for any reason. Drawing a reasonable inference that it does -- indeed, Assistant Commissioner Watson himself ordered Appellant's mattress to be returned because he

19

was "found not guilty of the infraction received on 6/28/11 for destruction of state property and possession of contraband," J.A. 36 -- issues of fact remain as to whether the officials were abiding by their own policy, or rather, were acting in a deliberately indifferent or malicious manner. Further discovery would give Appellant the chance to demonstrate how the "officers' account . . . conflicts with" his account. Ingle, 439 F.3d at 196. Moreover, whether the policy was applied uniformly is duly contested, and "[a] course of conduct that tends to prove that [a prison regulation] was merely a sham, or that [prison officials] could ignore it with impunity, provides equally strong support for the conclusion that they were fully aware of the wrongful character of their conduct." Hope v. Pelzer, 536 U.S. 730, 744 (2002).

## C.

For these reasons, the district court abused its discretion in failing to grant Appellant's discovery request. "Once discovery . . . is completed, the district court may again consider [Appellees'] motion for summary judgment" or qualified immunity, "if it deems that to be the appropriate course," Ingle, 439 F.3d at 197, keeping in mind that qualified immunity questions "should be resolved at the earliest possible stage of

20

a litigation."  Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987).

### III.

For all of the foregoing reasons, we vacate the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED

NIEMEYER, Circuit Judge, concurring in part, dissenting in part, and concurring in the judgment:

The majority remands this case to the district court for two nonexclusive purposes: (1) to permit the district court to "consider the risk of harm posed by depriving [Putney] of a mattress [but not blankets and pillows] for four months," and (2) "to grant [Putney] his request to pursue discovery."

While those purposes may become relevant -- and I do not disagree with the majority's discussion given in connection with them -- they jump over two other essential determinations that the district court must make before reaching the subjects identified by the majority. First, the district court must, at the outset, address the defendants' claim of qualified immunity, because such immunity is designed to protect the defendants from both discovery and trial. Second, the court must, in connection with the Eighth Amendment claim, determine whether Putney was deprived of a basic human need, which is a condition precedent under the Eighth Amendment to conducting an inquiry into the risk of injury. I will address these two points, in reverse order, to provide the district court with further guidance when it reconsiders this case.

22

I

On his conditions-of-confinement claim under the Eighth Amendment, Putney contends that, in depriving him of a mattress (but not blankets and pillows) for a four-month period, prison officials knowingly failed to provide him with a basic human need, causing him harm in violation of the Eighth Amendment.

The Eighth Amendment provides, in relevant part, that "cruel and unusual punishments [shall not be] inflicted." U.S. Const. amend. VIII. The Supreme Court has construed this clause to require prison officials to "provide humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Thus, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). But the Court has noted that "the Constitution does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). To succeed on an Eighth Amendment claim that a prisoner was not provided humane conditions of confinement, the prisoner must prove "(1) that the deprivation of [a] basic human need was objectively sufficiently serious, and (2) that subjectively the officials act[ed] with a sufficiently culpable state of mind." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th

23

Cir. 2003) (alterations in original) (emphasis added) (internal quotations marks and emphasis omitted) (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)); see also Farmer, 511 U.S. at 834 (explaining that, to violate the Eighth Amendment, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities'" (quoting Rhodes, 452 U.S. at 347)).

In this case, Putney has so far failed to explain how the denial of a mattress was anything more than a discomfort, and the Constitution, of course, does not afford him the right to a "comfortable" prison. Rhodes, 452 U.S. at 349; see also Trammell v. Keane, 338 F.3d 155, 165 (2d Cir. 2003) ("We have no doubt that Trammell was made uncomfortable by the deprivation of his clothing, but there is simply no factual dispute regarding whether the temperature in his cell posed a threat to his 'health or safety' of the sort that would disallow summary judgment in defendants' favor"). Indeed, when children or young adults participate in sleepovers or "crash" at each other's apartments, sleeping on the floor and using only blankets and pillows, they do not deprive themselves of a basic human need. Neither do soldiers on a mission away from their barracks, nor hikers on the trail. In fact, people have slept without mattresses from time immemorial, and do so routinely even today,

using only blankets and some form of headrest to serve as a pillow.

Understandably, Putney has not yet advanced any precedent to support his position that a mattress, on its own, qualifies as an indisputable life necessity, but this is a matter that must be explored by the district court on remand. Failing such support for his claim, Putney would fail, as a matter of law, to satisfy the objective prong of the test that governs such claims -- the prong requiring that he show that he suffered an extreme deprivation of a basic human need. See Strickler, 989 F.2d at 1379 ("Because we conclude that Strickler has not established the serious deprivation of a basic human need required to survive summary judgment on his claim of an Eighth Amendment violation, we need not consider whether Sheriff Waters acted with an intent sufficient to satisfy the Amendment's state-of-mind requirement" (emphasis added)).

II

Even before addressing whether the first prong of an Eighth Amendment conditions-of-confinement claim has been satisfied, however, the district court will have to address the defendants' claim of qualified immunity, the analysis for which includes

25

whether Putney demonstrated a "clearly established" Eighth Amendment violation.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (emphasis added) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The doctrine thus involves two steps: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether that right was clearly established at the relevant time. See Plumhoff v. Rickard, 134 S. Ct. 2012, 2020 (2014). A district court has discretion as to which step to address first. Pearson, 555 U.S. at 236.

Qualified immunity is "an immunity from suit rather than a mere defense to liability," and it is therefore "effectively lost if a case is erroneously permitted to go to trial." Pearson, 555 U.S. at 231 (emphasis added) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Indeed, the "driving force" behind the doctrine is the "desire to ensure that 'insubstantial claims against government officials [will] be resolved prior to discovery.'" Id. (alteration in original) (emphasis added) (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)).

26

The Supreme Court has accordingly "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Id. at 232 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)).

The majority recognizes that the district court did not originally address qualified immunity, and it properly indicates that it be addressed on remand. I only add that, to protect the defendants from both discovery and suit, it should be addressed at the outset as a gateway issue.

In addressing the immunity issue, the district court will have to determine whether Putney demonstrated that prison officials violated clearly established constitutional rights of which a reasonable official would have known. See Pearson, 555 U.S. at 231. And to determine whether a constitutional right was clearly established, he would have to show a violation of the right that is "particularized" to the circumstances of his case, such that a reasonable prison official "would understand that [confiscating Putney's mattress] violate[d] that right." Anderson, 483 U.S. at 640. "[T]he unlawfulness must be apparent." Id.

Of course, if the defendants are entitled to qualified immunity, it would not be necessary for the district court to reach the Eighth Amendment claim on the merits.

27