**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-6260**

ALBERT STEVEN TATE,

   Plaintiff – Appellant,

v.

BRYAN PARKS, Captain,

   Defendant – Appellee,

and

GEORGE HEMBREE, Major,

   Defendant.

------------------------------

RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER,

   Amicus Supporting Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Pamela Meade Sargent, Magistrate Judge.  (7:18-cv-00044-PMS)

Submitted:  October 1, 2019        Decided:  November 12, 2019

Before KING, DIAZ, and FLOYD, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

Albert Steven Tate, Appellant Pro Se.  Joseph Anthony Piasta, JOHNSON AYERS & MATTHEWS, PLC, Roanoke, Virginia, for Appellee.  Daniel M. Greenfield, Roderick & Solange Macarthur Justice Center, NORTHWESTERN PRITZKER SCHOOL OF LAW, Chicago, Illinois, for Amicus Curiae.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Albert Tate appeals the magistrate judge's order granting summary judgment to Brian* Parks on Tate's complaint under 42 U.S.C. § 1983 (2012), alleging that, as a pretrial detainee, Tate was denied due process, equal protection, and rights under the First Amendment. For the following reasons, we affirm in part, vacate in part, and remand for further proceedings.

At the time he filed suit, Tate was a pretrial detainee awaiting adjudication of charges against him for rape, sexual assault, and forcible sodomy. When Tate arrived at the jail, he was given the highest security classification and, shortly thereafter, hatched a plot to escape from custody. His scheme was discovered, and he was charged with attempted escape and placed in administrative segregation. In segregation, Tate was confined to his cell for 23 hours a day and was not permitted visits from family. Despite his frequent requests to be moved and to have his placement reviewed, and the documented deterioration of his mental condition, Tate was not removed from solitary confinement for at least a year and a half.

Tate filed this suit against Parks claiming that he was denied access to the jail's law library in violation of the First Amendment and the Due Process Clause, that he was placed in administrative segregation as punishment for his escape attempt and without explanation in violation of the Due Process Clause, that putting him in administrative segregation but

---

* Although the case caption spells Parks' first name as "Bryan," this is the correct spelling of the first name.

not doing the same for other inmates at the jail who had been charged with or found guilty of escaping or attempted escape was a violation of the Equal Protection Clause, and that his outgoing mail had been inspected and censored in violation of the First Amendment. The magistrate judge granted summary judgment in favor of Parks on all of these claims and denied Tate's discovery motions in which he sought to adduce evidence to support his equal protection claim.

Tate has appealed, pressing his due process and equal protection claims along with his claim that he was denied access to the courts. He also contends that the magistrate judge erred in granting summary judgment without allowing him to develop and obtain evidence to oppose Parks' summary judgment motion. We review de novo the magistrate judge's grant of summary judgment, which is appropriate only if there are no material facts in dispute and Parks, the moving party, is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Dilworth v. Adams*, 841 F.3d 246, 250 (4th Cir. 2016). We must liberally construe Tate's briefs and his pleadings below, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and view the facts in the light most favorable to him, drawing all reasonable inferences in his favor, *see Brooks v. Johnson*, 924 F.3d 104, 111 (4th Cir. 2019).

With respect to Tate's due process claims, a pretrial detainee has a right under the Due Process Clause to be free from punishment before his guilt is adjudicated. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). We have recently summarized the parameters of a pretrial detainee's due process claims challenging the conditions of his confinement. *See Williamson v. Stirling*, 912 F.3d 154, 173-86 (4th Cir. 2018). An individual pretrial detainee may raise a substantive due process challenge to these conditions where they are

4

so disproportionate or arbitrary that they are not related to legitimate penological objectives and amount to punishment. *Id.* at 174-76. To prevail on such a claim, a detainee must show that the challenged treatment or conditions were either (1) imposed with an express intent to punish, or (2) not reasonably related to a legitimate nonpunitive objective, in which case an intent to punish may be inferred. *Id.* at 178.

In addition, a pretrial detainee may assert a procedural due process violation based on the conditions of his pretrial confinement. *Id.* at 174-76. Jail officials may impose nonpunitive restrictions on a pretrial detainee for disciplinary or administrative reasons, but, as these restrictions implicate a detainee's liberty interests, he is entitled to certain procedural protections. *Id.* at 174-75. Where restrictions are imposed as a disciplinary measure of institutional misconduct, the detainee must be provided notice, a hearing, and a written explanation of the disciplinary action taken. *Id.* at 176. Where such restrictions are imposed instead for administrative reasons, the detainee is owed some notice of the proposed action and an opportunity to present his views. *Id.* at 175-77. In addition, the detainee must be afforded periodic review of his confinement. *Id.* at 176-77.

Here, with respect to Tate's substantive due process claim, the magistrate judge concluded that Parks had no express intent to punish Tate when placing him in segregation and that no intent to punish Tate could be inferred. In light of our decision in *Williamson*, we conclude that this determination should be revisited. In evaluating whether there is an intent to punish, a court may not simply accept the defendant's justification for placing a detainee in administrative segregation but must "meaningfully consider whether the conditions of confinement were reasonably related to the stated objective, or whether they

5

were excessive in relation thereto." *Id.* at 178 (internal quotation marks omitted). Moreover, this analysis applies to the initial decision to place the detainee in solitary confinement and more broadly to all the conditions and restrictions attendant thereto. *Id.*

Tate's case is similar enough to the facts in *Williamson* to warrant reconsideration by the magistrate judge. Both Tate and Williamson were restricted to a cell for 23 hours a day, with no visitors and extremely limited opportunities to exercise, access the library, or interact with anyone else. Moreover, Tate's solitary confinement, like Williamson's, was prolonged. *See Williamson*, 912 F.3d at 180; *see also Dilworth*, 841 F.3d at 252-53 (rejecting argument that 85 days in disciplinary segregation was de minimis and therefore could not amount to punishment).

Furthermore, as in *Williamson*, there is evidence that Tate's circumstances changed materially during his solitary confinement, in ways that might have warranted reconsideration of the restrictions placed upon him. *See Williamson*, 912 F.3d at 179-80. Tate did not again attempt to escape or incur any disciplinary interactions while in segregation, and his mental condition deteriorated significantly during this confinement. Yet there is no evidence Parks reevaluated the need to place Tate in solitary confinement, undermining Parks' assertion that keeping Tate in solitary confinement for such a long time was reasonably related to maintaining safety and security. *See id.*; *see also Incumaa v. Stirling*, 791 F.3d 517, 534 (4th Cir. 2015) (noting inmates are entitled to periodic review of solitary confinement). Accordingly, we vacate the grant of summary judgment on Tate's substantive due process claim and remand for reconsideration.

With respect to Tate's procedural due process claim, we conclude that the magistrate judge's analysis on this issue did not comport with *Williamson*. While the magistrate judge concluded that Tate's segregation was reasonably related to the legitimate objective of maintaining safety and security, the analysis stopped there.

At the outset, as discussed above, the magistrate judge's conclusion that Parks did not punish Tate warrants reconsideration in light of *Williamson*. And whether Tate's solitary confinement constituted punishment bears on the type of process he was owed. *See Williamson*, 912 F.3d at 182-84. Therefore, we vacate the grant of summary judgment on Tate's procedural due process claim and remand for reconsideration.

With respect to Tate's equal protection claim, to succeed on such a claim based on his placement in solitary confinement, Tate must prove that he was treated differently than other similarly situated inmates as a result of intentional discrimination and that his disparate treatment was not rationally related to any legitimate penological interest. *See King v. Rubenstein*, 825 F.3d 206, 220-21 (4th Cir. 2016). Here, in his amended complaint, Tate named several inmates who he alleged were not put in administrative segregation despite having been charged with, or found guilty of, escaping or attempting to escape. Tate had also repeatedly sought to discover information to demonstrate that these inmates were similarly situated to him, but the magistrate judge denied Tate's motions because Tate had not filed an affidavit under Fed. R. Civ. P. 56(d), citing *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002), and based on her conclusion that the evidence Tate sought would likely not have produced information that would have prevented the entry of summary judgment in Parks' favor.

7

We conclude that neither of those reasons can stand and that the magistrate judge abused her discretion in denying Tate's discovery motions. *See Harrods Ltd.*, 302 F.3d at 244 (reviewing for abuse of discretion district court's refusal to allow nonmovant opportunity to engage in discovery prior to entry of summary judgment). While the failure to file an affidavit may provide "sufficient grounds to reject a claim that the opportunity for discovery was inadequate," an affidavit is not necessarily required when a nonmoving party "through no fault of its own, has had little or no opportunity to conduct discovery" and "fact-intensive issues" are involved, so long as the nonmovant has not been lax in pursuing discovery and has "adequately informed" the district court through its motions and objections that summary judgment is premature and that more discovery is necessary. *Id.* at 244-45. Moreover, allowing a party enough time for discovery before summary judgment is particularly important when the other party has exclusive control of the relevant facts and when the case presents questions about intent and motive. *Id.* at 246-47; *see also McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 484 (4th Cir. 2014); *Willis v. Town of Marshall*, 426 F.3d 251, 263-64 (4th Cir. 2005) (vacating grant of summary judgment on class-of-one equal protection claim because plaintiff was not allowed discovery to demonstrate that others similarly situated were not treated similarly).

In this case, it is plain from Tate's filings in the district court after Parks moved for summary judgment that Tate was seeking to obtain evidence about the other inmates to support his equal protection claim. And in granting summary judgment to Parks on this claim, the magistrate judge faulted Tate for failing to provide evidence that there were inmates who were similarly situated but not held in solitary confinement. Such evidence,

8

however, was exclusively within Parks' control. *See McCray*, 741 F.3d at 484. As the magistrate judge did not allow Tate to discover this information prior to granting summary judgment for Parks on Tate's equal protection claim, we vacate the grant of summary judgment as to this claim and remand for reconsideration.

Finally, we affirm the district court's grant of summary judgment to Parks on Tate's access-to-courts claim. To state a claim that he was denied his right of access to the courts because he could not access the jail's law library, Tate had to allege he was actually injured in some way by the denial of access. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see also Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc) (requiring prisoner claiming denial of right of access to courts to make specific allegations and identify actual injury resulting from prison officials' conduct). Tate did not do so, as the magistrate judge noted in granting summary judgment. He now contends on appeal that the magistrate judge's denial of his claims in this suit constitutes his injury, but that was not—and could not have been—his alleged injury when he filed his complaint. To the extent Tate is raising a new claim on appeal, we decline to consider it. *See In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014).

\* \* \*

To sum up, we affirm the magistrate judge's grant of summary judgment on Tate's access-to-courts claim and her determination that Parks, in his official capacity, is immune from a suit for damages under § 1983. We vacate the magistrate judge's grant of summary judgment on Tate's due process and equal protection claims and remand for reconsideration of those claims. Because it was based on her conclusion that Parks did not

9

violate Tate's constitutional rights, we also vacate the magistrate judge's finding that Parks is entitled to qualified immunity on those claims. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Finally, we deny Tate's motion for relief from his obligation to pay his filing fee in accordance with the Prison Litigation Reform Act, 28 U.S.C. § 1915(b) (2012). We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED IN PART,*
*VACATED IN PART, AND REMANDED*